THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY KOZLOWSKI, Defendant-Appellant.

First District (2nd Division)   No. 1—91—3614

Opinion filed September 13, 1994.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Following a jury trial, defendant Gregory Kozlowski was convicted of aggravated criminal sexual abuse and sentenced to a seven-year prison term. He contends on appeal that his trial counsel's reliance on a defense that was not an available defense to the crime charged denied him the effective assistance of counsel. He maintains that because of this strategy, the prosecution's case was not subjected to meaningful adversarial testing, and that he is therefore entitled to a new trial without having to establish a reasonable probability that counsel's incompetence affected the outcome of the trial. Defendant also contends that the circuit court erred in failing to instruct the jury on an essential element of the crime charged. For reasons that follow, we reverse and remand for a new trial.

The 30-year-old defendant was charged with committing acts of oral copulation upon the 15-year-old complainant, who worked in defendant's flower shop. The charge was based on section 12—16(d) of the Criminal Code of 1961, which provides that, "[t]he accused commits aggravated criminal sexual abuse if he or she commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was at least 5 years older than the victim." (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(d) (now 720 ILCS 5/12—16(d) (West 1992)).) The statute does not require, and the indictment did not allege, the use of force or threat of force. See *People v. Campos* (1987), 155 Ill. App. 3d 348, 360, 507 N.E.2d 1342.

In opening statement, defense counsel told the jury that, through cross-examination of the State's witnesses, defendant would set out a defense or defenses to the charge and would testify to corroborate the defense.

Complainant testified that he was born on November 9, 1974, and was 15 years old when he began work in defendant's flower shop in May 1990. He and defendant occasionally drank beer after work, and defendant often talked about homosexual sex. At one point, defendant pushed complainant against a flower cooler and kissed him. Complainant became angry and left. However, on three subsequent occasions, complainant allowed defendant to perform acts of oral sex upon him. Complainant told his parents about the sexual activity after he began counseling sessions with a social worker.

After the direct examination of complainant, the court asked defense counsel in chambers whether his failure to object to certain questions was attributable to his trial strategy. Counsel asked the court which questions he thought were objectionable. The court responded that it did not intend to interfere, but wanted to be sure

that "this was the way you wanted to try the case." Counsel then stated that if there was something to which he wanted to object, he would have done so.

On cross-examination, defense counsel asked complainant whether he consented to the acts of oral copulation. Complainant responded that he did consent and that defendant did not use or threaten to use force.

Complainant's mother testified that his behavior at home changed for the worse after he began working for defendant and that she sent him to counseling sessions in August 1990. Approximately four months later, he told her about the sexual activity with defendant. Defense counsel did not object to this testimony.

Chicago police officer Kathleen Argentino testified that defendant was arrested in a hotel room in the company of a teenage boy who had run away from home. Defense counsel did not object to this testimony.

The circuit court then initiated the following exchange with defense counsel in chambers:

"THE COURT: I find it very difficult to sit out there and witness what's happening before me in what's said to be a trial. I have heard what I believe to be inadmissible hearsay, and I have heard evidence of another crime which has no connection so far with this case from what I can gather, and no objection being made.

\* \* \*

I hear a theory apparently of the defendant talking about force, where no force is involved in the case. The indictment does not charge force. It charges only age as the aggravating factor. I don't know what's going on. I am lost here.

The thing that I don't want to do is to sit here and to allow this to continue to go on like this, knowing that it very possibly is going to come back here for a mistrial if anybody ever takes it up.

Now, I am not to help anybody. I am not to interfere as I said before, but I want to ask this again. Is counsel, for example, aware that the indictment in this case is not predicated upon a theory that force was used? Are you aware of that, counsel? Are you aware?

[Defense Counsel]: I think that the part of the statute—

THE COURT: Are you aware of this, are you aware that there has been no force alleged whatsoever? \*\*\* Where force is not pleaded as the aggravating factor, I should not even give an instruction involving consent or concerning consent because it's immaterial and not applicable.

[Defense Counsel]: Well, judge, I don't think the statute has any—

THE COURT: All right. Fine. I am not going to waste any more time. Let's go out and finish the trial.

[Defense Counsel]: Judge, let's talk about this consent business. *** That's the real key to it.

THE COURT: I have said enough. If you want to check the law, you check it. Let's go out. You do whatever you wish, counsel. Before we go, I am not trying to tell you what to do. I am only asking you whether you were aware of certain things. I would suggest that you make yourself aware if you haven't made yourself aware. If you are aware, fine. I can do no more than what I have done."

Officer Peggy O'Connor testified that after speaking with complainant's parents, she went to defendant's flower shop and obtained from one of defendant's employees an information card bearing complainant's name, address, social security number, and date of birth.

After being advised of his *Miranda* rights, defendant stated to O'Connor that he was 30 years old, that he met complainant in May 1990, and that he believed complainant was 16 years old. Defendant admitted engaging in sexual activity with complainant, and according to O'Connor stated that the activity "took the form of his performing oral copulation" on complainant.

On cross-examination, defense counsel asked O'Connor whether she had a search or an arrest warrant when she went to defendant's shop. She stated that she did not, but that she went to the shop at a time when it was open to the public, and that defendant's employee voluntarily gave her the card.

At the close of the State's case, defense counsel moved for a directed verdict, arguing that the State did not prove defendant guilty beyond a reasonable doubt, and that complainant consented to the sexual activity. The motion was denied.

Defendant testified that his relationship with complainant was a "consensual relationship" and that he had never threatened to use force or violence.

On cross-examination, defendant admitted that he engaged in sexual activity with complainant, that he was 30 years old, and that he believed complainant was 16 years old.

During the instructions conference, the circuit court refused defendant's tendered instruction on consent, stating that force was not an element of the offense charged. Defense counsel asked, "[W]ell, your Honor, what is your source for that statement?" The court again explained that consent was not an available defense. Defense counsel then submitted an instruction stating that it is a defense if the accused reasonably believed that complainant was 17 years of

age or older. The court refused the instruction on the ground that there was no evidence in the case indicating that defendant believed the victim was 17 years of age or older. Defense counsel responded, "Well, Judge, isn't there something about age in the indictment?"

Following the instructions conference, defendant requested a conference pursuant to Supreme Court Rule 402 (134 Ill. 2d R. 402). After being admonished concerning the possible penalties that he could receive following a plea of guilty, defendant decided not to plead guilty. He also asked if he could have the public defender represent him, and the court denied his request.

In closing argument, defense counsel argued that complainant consented to the sexual activity with defendant, and that the behavioral changes to which complainant's mother testified could be attributed to normal growing pains. He also argued that Officer Argentino's testimony related more to a search for a teenage runaway than to the charges against defendant. He then stated that defendant testified that his relationship with complainant was consensual, and argued that the police possibly "went too far" in gathering evidence against defendant.

The prosecutor responded during rebuttal argument that consent was not a defense to the crime defendant was charged with committing. She stated that defendant admitted that he was 30 years old, believed complainant to be 16 years old, and engaged in the sexual activity charged.

I

Defendant first contends that his trial counsel's reliance on an unavailable defense resulted in a complete failure to subject the prosecution's case to meaningful adversarial testing. Citing *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, *cert. denied* (1986), 478 U.S. 1013, 92 L. Ed. 2d 727, 106 S. Ct. 3314, he maintains that this case presents an exceptional circumstance in which prejudice is presumed, and the two-part test stated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, need not be applied.

Under *Strickland*, a defendant must first prove that his or her counsel made errors so serious, and counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, a defendant must prove that his or her counsel's deficiencies "so prejudiced the defendant as to deprive him of a fair trial, a trial whose result is reliable." (*People v. Johnson* (1989), 128 Ill. 2d 253, 266, 538 N.E.2d 1118, 1123.) However, in *United States v. Cronic* (1984), 466 U.S. 648, 656, 656 n.19, 80 L. Ed. 2d 657, 666, 666 n.19, 104 S. Ct. 2039, 2045,

2045 n.19, the Supreme Court recognized that the right to the effective assistance of counsel is the right to "require the prosecution's case to survive the crucible of meaningful adversarial testing," and stated that "even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt." The Court held that where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, there is a denial of sixth amendment rights that makes the adversarial process itself presumptively unreliable. (*Cronic*, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047.) Under this circumstance, ineffective assistance of counsel will be established without a showing of prejudice as required by *Strickland*.

In *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, the Illinois Supreme Court found that defense counsel's conduct was *per se* ineffective. There, the defendant pleaded not guilty to a murder charge, and his counsel's strategy consisted of conceding that the defendant was guilty of murder but arguing that he was not deserving of the death penalty. In furtherance of that strategy, defense counsel relied on the defense of compulsion, which was not an available defense. The court reversed and remanded for a new trial, noting that counsel's conduct in conceding the defendant's guilt was inconsistent with the defendant's plea of not guilty, and that there was no showing that the defendant consented to the strategy employed.

*Hattery* was sharply limited by the court's later decision in *People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118, where defense counsel conceded that the defendant committed murder but argued that he did not commit felony murder. The court stated that although *Hattery* condemned the practice of conceding the defendant's guilt without a showing on the record that the defendant consented to the strategy, it did not constitute *per se* ineffective assistance "especially *** when counsel presents a strong defense to the other charges." (*Johnson*, 128 Ill. 2d at 269, 538 N.E.2d at 1124-25.) The court in *Johnson* noted that defense counsel asserted a theory of defense to a number of the charges, not simply a theory of mitigation, and pursued the theory during opening and closing arguments and in cross-examination. *Johnson*, 128 Ill. 2d at 270, 538 N.E.2d at 1125.

Subsequently, in *People v. Ganus* (1992), 148 Ill. 2d 466, 594 N.E.2d 211, *cert. denied* (1993), 506 U.S. 1083, 122 L. Ed. 2d 362, 113 S. Ct. 1055, the supreme court considered a situation in which defense counsel relied upon the defense of compulsion despite the fact that it was not a defense to the crime charged. The court refused to find *per se* ineffective assistance of counsel, stating that the defense of

compulsion, although not a legal defense, could have persuaded a jury not to convict and that it appeared "defense counsel used his imagination and resourcefulness to come up with something where he had nothing to go on." (*Ganus*, 148 Ill. 2d at 474, 594 N.E.2d at 215; see also *People v. Page* (1993), 155 Ill. 2d 232, 614 N.E.2d 1160, *cert. denied* (1993), 510 U.S. 981, 126 L. Ed. 2d 430, 114 S. Ct. 479.) The record in *Ganus* showed that defense counsel consulted with legal experts in the area of death penalty trials and obtained the defendant's consent to the trial strategy employed.

■ In the case at bar, the record belies any suggestion that defense counsel's reliance on a consent defense resulted from a conscious strategy rather than a misapprehension of the law. Defense counsel failed to object to a single question posed by the prosecutor, leading the circuit court to warn in chambers that inadmissible hearsay and evidence of another crime with no connection to the instant offense had been heard by the jury. Counsel appeared to be unaware of the particular charge contained in the indictment, at one point asking the court, "[w]ell, Judge, isn't there something about age in the indictment?" Also, despite the circuit court's repeated admonitions that consent was not a defense based on the wording of the statute and the indictment, counsel continued to maintain that consent was "the real key" to the matter. When the circuit court refused defendant's jury instruction on consent, stating that consent was not a defense, counsel asked, "[W]ell, your Honor, what is your source for that statement?" This query by counsel came after repeated admonitions that force was not an element of the offense.

In the process of presenting a defense, cross-examination of complainant was limited to whether or not he consented to the sexual activity with defendant. Defendant then testified that his relationship with complainant was consensual, and on cross-examination admitted that his confession to the police was true. There is no indication from the record that defendant was aware that consent was not an available defense, much less that he consented to that strategy.

We recognize that defendant bears a high burden before he can forsake the two-part *Strickland* test. In the case at bar, however, a thorough review of the record leads us to conclude that counsel's conduct completely failed to subject the prosecution's case to meaningful adversarial testing and that a new trial is accordingly required.

## II

We will also consider defendant's assertion as to the propriety of

a particular jury instruction because it may arise on retrial. Defendant contends that the issues instruction on aggravated criminal sexual abuse was improper because it omitted a mental state, which is an essential element of the crime. In making this argument, defendant relies upon *People v. Gean* (1991), 143 Ill. 2d 281, 573 N.E.2d 818.

■ This exact argument was considered and rejected in *People v. Garland* (1993), 254 Ill. App. 3d 827, 627 N.E.2d 377, *appeal denied* (1994), 155 Ill. 2d 569, 633 N.E.2d 9, and *People v. DeBusk* (1992), 231 Ill. App. 3d 229, 595 N.E.2d 1156. In *Garland* and *DeBusk*, the court held that where the offense is a general intent crime and the mental state is necessarily implied by the circumstances of the crime, it is not error to omit the implied mental state from the issues instruction. *Gean* was distinguished on the basis that it involved specific intent offenses under the Illinois Vehicle Code. By their nature, acts of sexual penetration involve general intent, and therefore do not require an allegation of a specific mental state. (*People v. Avila* (1989), 180 Ill. App. 3d 345, 353, 535 N.E.2d 1027, 1032.) Accordingly, we reject defendant's claim of error.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

SCARIANO and McCORMICK, JJ., concur.