No. 2--04--1095                                         filed: 8/2/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--3702 |
| JUAN C. GARIBAY, | ) ) | Honorable Victoria A. Rossetti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Defendant, Juan C. Garibay, and two others, Eduardo Ventura and Juan S. Garcia, were each charged with five counts of first degree murder (720 ILCS 5/9--1 (West 2002)) in connection with the August 8, 2003, shooting death of Giovanni Mendiola. Pursuant to an agreement with the State, defendant pleaded guilty to a single count of second degree murder (720 ILCS 5/9--2(a)(1) (West 2002)) under an accountability theory. The State nol-prossed the first degree murder charges and the trial court sentenced defendant to a 15-year prison term. Defendant unsuccessfully moved for reconsideration of his sentence and this appeal followed. Defendant contends that his sentence is excessive. We affirm.

Before defendant entered his plea, the trial court held a conference pursuant to Supreme Court Rule 402(d) (177 Ill. 2d R. 402(d)), which permits the parties to obtain the court's concurrence or conditional concurrence in a tentative plea agreement. The conference was not held on the

record, but the court's remarks after the conference reveal that although the parties had not yet reached a binding agreement, they had discussed the possibility that defendant would plead guilty to a reduced charge of second degree murder. During the conference, the court was apprised of the circumstances of the offense and of factors in aggravation and mitigation germane to sentencing. The court stated that if defendant pleaded guilty and the facts were as represented, he would receive a sentence of imprisonment for a term between 14 and 18 years. The matter was continued for further plea negotiations, and the parties ultimately reached an agreement that defendant would plead guilty to the reduced charge.

Before defendant entered his guilty plea, his attorney stated that defendant was entering an "open plea." The trial court advised defendant that second degree murder was a Class 1 felony carrying the possibility of a prison term between 4 and 20 years, but made no reference to its earlier statement that it would impose a prison term between 14 and 18 years. The parties stipulated, as the factual basis for the plea:

> "On August 8th of 2003, this defendant, along with two other defendants, went down to the--where Giovanni Mendiola *** was, having previous altercations with Giovanni Mendiola. Got into a fight with Giovanni Mendiola and this defendant. Another defendant shot Giovanni Mendiola, thereby killing him."

The trial court ordered preparation of a presentence investigation report (PSI), which included a fuller account of the offense, based on police reports, grand jury testimony, and defendant's interview with the probation officer who prepared the PSI. According to the PSI, defendant and the victim were neighbors and had been involved in an argument prior to the offense. The argument arose when the victim asked defendant to stop riding a motor scooter on the sidewalk, because it presented a hazard to the children in the neighborhood. The argument escalated into a

physical altercation.  A week later, defendant, Ventura, and Garcia went to the victim's home.

Ventura was armed with a handgun.  A fight ensued and the victim's brother struck Ventura in self-

defense.  Ventura pulled out his handgun, and the victim's brother ran from the scene.  Ventura then

shot the victim.

Defendant reported that his car had been burglarized a few days after his initial altercation

with the victim.  Defendant stated that he suspected that the victim might have been involved, so he

and one of his friends confronted the victim.  Defendant stated that during the confrontation he was

struck by a baseball bat and he ran from the scene.  As defendant was running, Ventura shot the

victim.

According to the PSI, defendant was 24 years old at the time of the offense and had three

children with his girlfriend of six years.  Defendant's father moved to Mexico in 1994 and defendant

later quit school so that he could support his family.  Defendant's criminal history included a

juvenile record of delinquency adjudications for burglary and possession of drug paraphernalia.  As

an adult, defendant accumulated a string of convictions between 1998 and 2002 for driving under the

influence of alcohol and driving with a suspended or revoked license.  In September 2002, defendant

was sentenced to a one-year prison term for driving with a revoked license.  He was released from

the Department of Corrections in November 2002.  Accordingly, defendant was on mandatory

supervised release when the victim was killed.  See 730 ILCS 5/5--8--1(d) (West 2002).  In addition

to these offenses, defendant had a misdemeanor conviction in 2001 of theft.  The PSI further

indicated that defendant drank alcohol on a daily basis and had experimented with marijuana and

cocaine.

At defendant's sentencing hearing, the court considered a victim impact statement prepared

by the victim's mother.  The court also considered a letter from defendant's girlfriend describing

defendant as a kind, loving, and caring parent and companion. Several of defendant's relatives attested to defendant's good character and portrayed him as generous, respectful, and loving.

At the hearing, the State acknowledged the sentencing range specified by the trial court following the Rule 402(d) conference. Likewise, in imposing a sentence of 15 years' imprisonment, the trial court noted that following the Rule 402(d) conference it had specified the range of sentences it would consider.

Defendant moved for reconsideration of his sentence. The trial court denied the motion and this appeal followed.

Defendant argues on appeal that the trial court abused its discretion in sentencing him to a 15-year prison term. Before reaching that issue, we first consider whether defendant has complied with Supreme Court Rule 604(d). Rule 604(d) provides, in pertinent part, that "[n]o appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment." 188 Ill. 2d R. 604(d). Under Rule 604(d), a "negotiated" guilty plea "is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending." 188 Ill. 2d R. 604(d). In their original briefs, defendant and the State treated defendant's plea as nonnegotiated. However, this court ordered further briefing on the matter. We asked the parties to address the question of whether the State effectively made a concession that defendant's sentence would fall within the range indicated by the trial court following the Rule 402(d) conference. In their supplemental briefs, both parties have persisted in their original view that the plea was not negotiated. We agree.

We are aware of two cases--People v. Dunn, 342 Ill. App. 3d 872 (2003), and People v. Gougisha, 347 Ill. App. 3d 158 (2004)--in which guilty pleas were deemed negotiated because the trial courts had previously indicated what sentences would be imposed if guilty pleas were entered. In Dunn, the parties had engaged in a Rule 402(d) conference, and the defendant subsequently pleaded guilty to a single count of residential burglary. Before accepting the defendant's guilty plea, the trial court stated to the defendant, " 'I did say on a prior occasion if you plead guilty, I would sentence you to 20 years in the Illinois Department of Corrections.' " Dunn, 342 Ill. App. 3d at 875. The appellate court rejected the defendant's argument that because the defendant's agreement as to sentencing was with the trial court, not the State, it was nonnegotiated. Rather, based on the State's participation in the Rule 402(d) conference, the Dunn court found that the State was a party to the agreement. Dunn, 342 Ill. App. 3d at 880.

In Gougisha, a Rule 402(d) conference was held, and the defendant subsequently pleaded guilty to aggravated battery of a child. Before the defendant entered her plea, her attorney stated that she was doing so in exchange for the trial court's "offer" of a 12-year sentence, and the trial court confirmed that it had made such an "offer." Relying on Dunn, the Gougisha court concluded that the plea was negotiated. Gougisha, 347 Ill. App. 3d at 161. For the reasons that follow, we believe that the reasoning in Dunn and Gougisha is flawed.

We begin our analysis with the observation that the conference procedure set forth in Rule 402(d) was misused in this case. Rule 402(d) is designed to permit the parties to bring a tentative plea agreement before the trial court for its concurrence or conditional concurrence. However, it is not the trial court's role to broker a plea agreement. Where the parties themselves have not reached an agreement as to a defendant's sentence or range of sentence, it is not the trial court's province to predetermine, unilaterally, the sentence or range of sentence for a defendant who has yet to plead

guilty. When the court does so, the sentence is not, in any meaningful sense, the product of an agreement between the State and the defendant. We recognize that when the trial court made its improper preliminary sentencing determination, the State was under no obligation to reduce the charges against defendant from first degree murder to second degree murder. Similarly, defendant was under no obligation to plead guilty to second degree murder. However, we are disinclined to hold that the parties somehow acquiesced in the trial court's preliminary determination. To so hold would effectively deprive the parties of any ability to enter into an agreement for an open plea, and we can conceive of no reason why the parties should not have that option. To the extent that Dunn and Gougisha dictate a different result, we decline to follow those cases.

Under the circumstances, the nature of the agreement between the State and defendant was ambiguous at the very least. A finding that a plea agreement is negotiated forecloses the defendant's right to challenge only his sentence. Accordingly, where there is an ambiguity with respect to whether the parties have entered into any agreement as to sentencing, the plea agreement should not be construed as negotiated. Here, when defendant entered his plea, the parties did not indicate that they had reached any agreement as to defendant's sentence. Further, defense counsel stated, without contradiction, that defendant was entering an open plea. We conclude that defendant's plea was not negotiated for purposes of Rule 604(d). Accordingly, he was not required to move to withdraw his plea.

We turn now to the merits of the sentencing issue. It is firmly established that the trial court is the proper forum to determine a sentence and that the trial court's sentencing decision is entitled to great deference and weight. People v. Latona, 184 Ill. 2d 260, 272 (1998). The trial court is charged with the duty to balance relevant factors and make a reasoned decision as to the appropriate punishment in each case. Latona, 184 Ill. 2d at

272. When a sentence falls within the statutory limits for the offense, it will not be disturbed absent an abuse of discretion by the trial court. See People v. Coleman, 166 Ill. 2d 247, 258 (1995). A trial court abuses its sentencing discretion when the penalty imposed "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." People v. Stacey, 193 Ill. 2d 203, 210 (2000).

In determining an appropriate sentence, relevant considerations include the nature of the crime, the protection of the public, deterrence, and punishment, as well as the defendant's rehabilitative prospects and youth. People v. Kolzow, 301 Ill. App. 3d 1, 8 (1998). The weight to be attributed to each factor in aggravation and mitigation depends upon the particular circumstances of the case. Kolzow, 301 Ill. App. 3d at 8. The existence of mitigating factors does not obligate the trial court to impose the minimum sentence (People v. Adamcyk, 259 Ill. App. 3d 670, 680 (1994)), and a defendant's youth does not necessarily outweigh the other relevant factors (People v. Hernandez, 319 Ill. App. 3d 520, 529 (2001)). The trial court is not required to specifically identify all factors in mitigation that it considers. Adamcyk, 259 Ill. App. 3d at 680. A sentencing judge is presumed to have considered all relevant factors, including the mitigating evidence presented, unless the record affirmatively shows otherwise. Hernandez, 319 Ill. App. 3d at 529.

In arguing that his sentence is excessive, defendant emphasizes that he did not personally shoot the victim, and that he was running away from the altercation when the victim was shot. He also claims that the offense was a result of a strong provocation, which should be considered a mitigating circumstance. In addition, defendant claims that his sentence is excessive in light of his background.

Here, the record shows that the trial court considered in mitigation the fact that defendant did not inflict the mortal wound. According to defendant, however, the trial court did not consider, as mitigating evidence, that moments before the shooting occurred, defendant was running away from the scene, having been struck by the victim with a baseball bat. It should be noted that this argument distorts the record. According to the PSI, defendant reported being struck by a baseball bat, but he did not state that it was the victim who swung the bat at him. More importantly, the fact that defendant was running away after being struck by a bat is not necessarily mitigating, as it may readily be inferred that defendant fled out of concern for his personal safety, not as an act of conscience.

Defendant also argues that the offense was the result of a strong provocation, which should be considered in mitigation. However, this mitigating circumstance has already been taken into account in reducing defendant's offense from first degree murder to second degree murder. Provocation is inherent in the form of second degree murder that defendant was found guilty of committing. Section 9--2(a)(1) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/9--2(a)(1) (West 2002)) provides that a person commits second degree murder when he commits first degree murder and, "[a]t the time of the killing[,] he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed." Just as a factor implicit in the offense should not be used in aggravation (see, e.g., People v. Malin, 359 Ill. App. 3d 257, 264 (2005)), it should likewise not be used in mitigation. Although the General Assembly fixes the range of sentences for a particular offense, sentencing in Illinois is still individualized, and the trial court must base its decision on the particular facts and circumstances of the

case.  People v. Purcell, 364 Ill. App. 3d 283, 303 (2006).  Consideration of circumstances that are necessarily present in every instance of a particular offense--whether aggravating or mitigating--would undermine individualized sentencing and would tend to skew sentencing decisions systematically toward one end or the other of the range established by the General Assembly.

The mere fact that a defendant acts under a strong provocation should be entitled to little or no weight because it does not differentiate him or her from any other defendant convicted of second degree murder under section 9--2(a)(1) of the Criminal Code.  On the other hand, the nature and extent of the provocation in a particular case may well be germane to the sentencing decision.  Here, defendant's plea of guilty of second degree murder apparently was based on a theory of mutual combat, which is one of the recognized forms of serious provocation sufficient to reduce first degree murder to second degree murder.  People v. Moore, 343 Ill. App. 3d 331, 339 (2003).  However, the evidence of mutual combat appears marginal at best.

" 'Mutual quarrel or combat'  has been defined as a fight or struggle that both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat."  Moore, 343 Ill. App. 3d at 339.  Moreover, "[t]he defendant's retaliation must be proportionate to the provocation [citation], and a defendant who instigates combat may not rely upon the victim's response as evidence of mutual combat sufficient to reduce first-degree murder to second-degree murder [citation]."  Moore, 343 Ill. App. 3d at 339.  It is not especially clear from the factual basis for defendant's plea or from the account of the crime in the PSI that the victim and his brother were actually willing participants in the altercation.  Defendant and his companions,

one of whom was armed, confronted the victim, evidently in retaliation for an earlier confrontation and because defendant suspected that the victim had burglarized his car (although nothing in the record reveals the basis for defendant's suspicion). Defendant also argues that the victim provoked the conflict by hitting defendant with a baseball bat. As noted, however, even if someone struck defendant with a bat, the record does not show that it was the victim who did so. Moreover, the combatants did not fight on equal terms-- while the victim's brother struck Ventura with a bat (reportedly in self-defense), Ventura was armed with a gun, and he misdirected his retaliation at the victim.

Defendant further contends that his youth, his difficult childhood, his problems with alcohol, his family's testimony about his good character, and his lack of a prior history of violent crimes all support reduction of his sentence. It was the trial court's responsibility to consider this mitigating evidence, determine what weight to give it, and balance it against evidence in aggravation. As noted, defendant's youth does not necessarily outweigh other factors. Although defendant's relatives presented evidence of his exemplary character in the family setting, his behavior in the current offense presents a sharp contrast, showing defendant's readiness to use violence to resolve minor disputes. The altercation leading to the victim's death was not a spontaneous occurrence; rather, defendant and his companions brought the fight to the victim. Nor is defendant's criminal background entitled to weight in mitigation. Although defendant's past convictions were not for crimes of violence, his criminal record is fairly extensive and reflects an inability or unwillingness to conform his behavior to the requirements of the law. Moreover, at the time of the offense, he was on mandatory supervised release following an earlier prison sentence. This circumstance reflects poorly on defendant's prospects for rehabilitation. In view of all of the

circumstances, the trial court did not abuse its discretion in concluding that a relatively lengthy sentence was appropriate.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

KAPALA and GILLERAN JOHNSON, JJ., concur.