Fourth Division
February 14, 2008

No. 1-05-3888

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 04 CR 24263 (06) |
| | ) | |
| TERAH GRIMES, | ) | Honorable |
| | ) | Thomas R. Sumner, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE NEVILLE delivered the opinion of the court:

Defendant, Terah Grimes, was charged in a complaint with criminal drug conspiracy and delivery of a controlled substance within 1,000 feet of a school or church. 720 ILCS 570/407(b)(1) (West 2004). After a bench trial, the defendant was convicted of criminal drug conspiracy and multiple counts of the lesser-included offense of delivery of a controlled substance and sentenced to 13 years in the penitentiary. Grimes appeals his conviction and contends: (1) that his trial counsel provided ineffective assistance; (2) that his sentence should be vacated because the trial court relied on improper factors in sentencing him; and (3) that the mittimus must be corrected to accurately reflect defendant's sentencing credit and his actual conviction of a Class 1 offense, as opposed to a Class X felony. We affirm defendant's conviction and sentence.

BACKGROUND

On May 19, 2004, the Chicago police department was investigating narcotics activity that

was occurring in the area of Washington and Keeler Streets in Chicago, Illinois. As part of the investigation, undercover officers purchased heroin, and 8 of the 10 purchases made were videotaped. At the bench trial, Officer Lewis Garcia testified that on July 6, 2004, he was working undercover near Washington and Keeler Streets. He approached codefendant William McGee and asked about buying 12 packets of heroin for $100, a deal that he had previously received from McGee. McGee pointed to defendant, who was approximately 20 to 30 feet away. Defendant approached and Officer Garcia asked him about buying the 12 packets of heroin for $100. Defendant told Officer Garcia to follow him. They went west into an alley. Defendant told Officer Garcia to wait for a moment, then the defendant walked north in the alley to a fence alongside a building, where he bent down and retrieved a clear plastic bag from the grass. Defendant gave the bag, which contained 12 tinfoil packets, to Officer Garcia in exchange for $100. The parties stipulated to the contents of the packets. Although the stipulation was not read into the record, defendant concedes on appeal that the parties stipulated to the fact that the packets contained heroin.

Officer Garcia also testified that on July 20, 2004, he was working undercover near Washington and Keeler Streets, where he saw Grimes and McGee. Officer Garcia asked defendant for "sawbucks," which, according to the witness, are $10 bags of powdered heroin. Defendant told Officer Garcia to follow him into the alley, then he called over McGee. Officer Garcia told McGee that he wanted eight sawbucks. McGee walked to a vacant lot and then returned and handed Officer Garcia eight tinfoil packets of suspected heroin for $80.

Officer Quan Nguyen testified that he was the video surveillance officer and that he videotaped the transactions which occurred in the area of Washington and Keeler Streets on July 6

and July 20, 2004. Officer Nguyen identified defendant in the videos. Officer Linden Franco, another video surveillance officer, also identified the defendant in a July 6 video. Officer Franco testified that the video depicted defendant giving narcotics to Officer Garcia and receiving money.

After closing arguments, the trial court found defendant guilty of conspiracy and multiple counts of delivery of a controlled substance, but found that the State had failed to prove that the offense occurred within 1,000 feet of a church or school. The trial judge had the defendant's presentence investigation report, which revealed the defendant had three prior convictions for possession of a controlled substance. The trial court sentenced defendant to 13 years' imprisonment. Defendant filed this timely appeal.

ANALYSIS

INEFFECTIVE ASSISTANCE OF COUNSEL

First, defendant argues that his trial counsel provided ineffective assistance by: (1) demonstrating a misunderstanding of the law regarding the offense of criminal drug conspiracy, in that counsel's theory was premised on the mistaken belief that a conspiracy cannot be proved with only two conspirators; (2) failing to cross-examine the witnesses against him; (3) conceding defendant's guilt for the deliveries; and (4) providing no closing argument on the conspiracy charge.

To prevail on a claim of ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced defendant. Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). While both prongs of the Strickland test must be satisfied, a claim of ineffective assistance may be disposed of if defendant cannot establish sufficient prejudice.

People v. Albanese, 104 Ill. 2d 504, 527 (1984). To demonstrate prejudice, defendant must show that, but for counsel's deficient performance, the result would have been different. Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Furthermore, a strong presumption exists that counsel's performance involved sound trial strategy. People v. Medrano, 271 Ill. App. 3d 97, 100 (1995).

The defendant's claims of ineffective assistance regarding defense counsel's failure to cross-examine witnesses constitute a challenge to the defense counsel's trial strategy, which is a matter beyond the scope of appellate review. See People v. Patterson, 347 Ill. App. 3d 1044, 1054 (2004) ("The decision whether to call particular witnesses and the manner and extent of cross-examination are matters of trial strategy and thus will not ordinarily support an ineffective-assistance-of-counsel claim").

Further, contrary to defendant's argument, the record does not show that counsel misunderstood the law regarding the offense of criminal drug conspiracy. The criminal drug conspiracy statute provides that a criminal drug conspiracy exists where two or more people agree to commit one of the enumerated offenses. See 720 ILCS 570/405.1(a) (West 2004). Defendant contends that his counsel's theory at trial had no merit because a criminal drug conspiracy cannot be proved with only two conspirators. Our review of the record reveals that defense counsel never stated that a criminal drug conspiracy cannot be proved with only two conspirators. Rather, counsel's theory at trial was that there were no coconspirator's statements showing that defendant was involved in the conspiracy.

Next, defendant contends that defense counsel was mistaken in his belief that the State

needed to produce actual statements by a coconspirator to prove conspiracy, as Illinois law allows a court to infer an agreement between defendants. See People v. Garth, 353 Ill. App. 3d 108, 121 (2004). Defendant contends that his counsel's misapprehension of the law constituted ineffective assistance of counsel.

Defendant's argument lacks merit. After reviewing the record, we find that counsel had a very difficult case because the testimonial evidence coupled with the videotapes of the July 6 and July 20, 2004, drug transactions provided the State with overwhelmingly evidence of his client's guilt. Counsel's defense was an attempt to raise a reasonable doubt in the mind of the trier of fact. Accordingly, in an effort to raise a reasonable doubt as to defendant's involvement in the conspiracy, counsel argued that there were no coconspirator's statements linking Grimes to any conspiracy. In light of the overwhelming evidence against the defendant, we find counsel's argument was not objectively unreasonable and did not constitute ineffective assistance of counsel.

In addition, defendant's claims of ineffective assistance also fail because he was not prejudiced by his counsel's defense. As discussed, the testimonial and videotaped evidence against defendant was overwhelming. Officer Garcia testified that on two occasions he obtained tinfoil packets from defendant and codefendant McGee. The tinfoil packets obtained later tested positive for heroin. Furthermore, defendant's transactions with the officer were recorded on videotape by Officers Nguyen and Franco, who identified the defendant in the tapes. Therefore, in light of the aforementioned evidence, the result of the trial would not have been different even in the absence of counsel's allegedly deficient performance. Accordingly, defendant's claims of ineffective assistance fail.

However, defendant also contends that his claims of ineffective assistance of counsel should be assessed, not under the Strickland standard, but rather under the standard set forth in United States v. Cronic, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984). In Cronic, the Supreme Court held that where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of [s]ixth [a]mendment rights that makes the adversary process itself presumptively unreliable." Cronic, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047. Under this circumstance, ineffective assistance of counsel is established without a showing of prejudice as required by Strickland. People v. Kozlowski, 266 Ill. App. 3d 595, 600 (1994).

The Cronic standard is not applicable here because defense counsel made an opening statement in which he asserted that there was no evidence of any coconspirator's statement linking defendant to the conspiracy; moved for a directed finding; and joined counsel for the codefendants in successfully arguing that defendant was not within 1,000 feet of a school or church, thereby reducing defendant's offense from a Class X to a Class 1 offense. After reviewing defendant's counsel's prosecution of this case, we cannot say that counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing" (Cronic, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047), and thus the Cronic standard does not apply.

IMPROPER SENTENCING FACTORS

Next, defendant contends that his sentence should be vacated because the trial court made a racial remark during sentencing that indicates it considered an improper factor. Trial courts have broad discretionary powers that they employ when choosing an appropriate sentence in situations such as defendant faced. People v. Csaszar, 375 Ill. App. 3d 929, 947-48 (2007), citing People v.

Jones, 168 Ill. 2d 367, 373 (1995). Trial courts are charged with making a reasoned sentencing judgment that is based upon the particular circumstances in a defendant's case, encompassing the unique blend of many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. Csaszar, 375 Ill. App. 3d at 948, quoting People v. Donath, 357 Ill. App. 3d 57, 72 (2005), citing People v. Perruquet, 68 Ill. 2d 149, 154 (1977). " 'The defendant's history, character, rehabilitative potential, the seriousness of the offense, the need to protect society and the need for deterrence and punishment are all factors to be considered in fashioning a sentence.' " Csaszar, 375 Ill. App. 3d at 948, quoting Donath, 357 Ill. App. 3d at 72, citing People v. Jones, 295 Ill. App. 3d 444, 455 (1998).

" 'Although the legislature has prescribed the permissible ranges of sentences, great discretion still resides in the trial judge in each case to fashion an appropriate sentence within the statutory limits.' " People v. Clark, 374 Ill. App. 3d 50, 68 (2007), quoting People v. Fern, 189 Ill. 2d 48, 53 (1999). " 'The sentencing judge is to consider "all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding." ' " Clark, 374 Ill. App. 3d at 68-69, quoting Fern, 189 Ill. 2d at 55, quoting People v. Barrow, 133 Ill. 2d 226, 281 (1989).

Because trial courts have broad discretion in the imposition of sentence, a reviewing court may only disturb that sentence when the trial court has abused its discretion. People v. Hauschild, 226 Ill. 2d 63, 90 (2007), citing People v. Stacey, 193 Ill. 2d 203, 209-10 (2000); see also Jones, 168 Ill. 2d at 373-74. In Illinois, a trial court abuses its discretion where " 'the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the

trial court.' " People v. Sutherland, 223 Ill. 2d 187, 272-73 (2006), quoting People v. Hall, 195 Ill. 2d 1, 20 (2000). If a sentence imposed is within the statutory guidelines, it will not be deemed excessive unless the sentence is greatly at variance with the spirit and purpose of the law and the nature of the offense. Hauschild, 226 Ill. 2d at 90, citing Stacy, 193 Ill. 2d at 210. Put another way, "[w]here a sentence falls within statutory guidelines, it is presumed to be proper and will be overturned only on an affirmative showing that it departs from the intent of the law or violates constitutional guidelines." People v. Hamilton, 361 Ill. App. 3d 836, 846 (2005), citing People v. Boclair, 225 Ill. App. 3d 331, 335 (1992). Therefore, in this case, where defendant challenges the sentence and alleges the use of an improper sentencing factor, we must determine whether the defendant's sentence is within the statutory guidelines or whether the sentence departs from the intent of the law or violates constitutional guidelines.

In this case, the parties stipulated to the fact that 2.4 grams of heroin were found in the eight recovered packages and that Grimes was found guilty of a criminal drug conspiracy and given a Class X felony sentence of 13 years for violating section 405.1 of the Controlled Substances Act (720 ILCS 570/405.1(c) (West 2004)). We note that section 405.1(c) of the Controlled Substances Act prescribes the appropriate sentence for a criminal drug conspiracy and provides the following qualifying language: "A person *** may be fined or imprisoned or both, but any term of imprisonment imposed shall be not less than the minimum nor more than the maximum provided for the offense which is the object of the conspiracy." 720 ILCS 570/405.1(c) (West 2004).

The offense that was the object of the conspiracy is the manufacture or delivery of a controlled substance. 720 ILCS 570/401(c)(1) (West 2004). Section 401(c)(1) of the Controlled

Substances Act provides that a person is guilty of a Class 1 felony if that person manufactures or delivers or possesses with the intent to manufacture or deliver "1 gram or more but less than 15 grams of any substance containing heroin, or an analog thereof." 720 ILCS 570/401(c)(1) (West 2004). Section 5-8-1(a)(4) of the Unified Code of Corrections provides that, "for a Class 1 felony, other than second degree murder, the sentence shall be not less than 4 years and not more than 15 years." 730 ILCS 5/5-8-1(a)(4) (West 2004). Finally, section 5-8-1(a)(3) of the Unified Code of Corrections provides that, "except as otherwise provided in the statute defining the offense, for a Class X felony, the sentence shall be not less than 6 years and not more than 30 years." 730 ILCS 5/5-8-1(a)(3) (West 2004).

Defendant maintains the fact that the trial judge classified him as a Class X offender establishes that the judge used an improper factor. We find that making an improper classification does not establish the use of an improper factor because, even if the trial court judge incorrectly classified Grimes' offense as a Class X offense, he was not prejudiced by the classification because he was sentenced to 13 years, which was within the sentencing guidelines for a person convicted of a Class 1 offense. 730 ILCS 5/5-8-1(a)(4) (West 2004). We find no need to remand this case for resentencing because there is a presumption that a sentence within the statutory guidelines is correct, and even improperly considered factors are considered insignificant when they do not lead to a greater sentence. People v. Gilliam, 172 Ill. 2d 484, 521 (1996) (where the reviewing court can determine from the record that the weight the trial court placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, it is not necessary to remand for resentencing); People v Garibay, 366 Ill. App. 3d 1103, 1108 (2006). Accordingly,

because defendant's sentence of 13 years was within the statutory guidelines for a person convicted of a Class 1 offense, we hold that the trial court did not use an improper sentencing factor. 730 ILCS 5/5-8-1(a)(4) (West 2004).

While an improper sentencing factor was not used by the trial court because the sentence was within the statutory guidelines, we will nevertheless consider the defendant's contention that the trial court used the defendant's race as a sentencing factor. During sentencing, the trial court engaged in the following colloquy with the defendant:

"[THE COURT]: Mr. Grimes, anything you wish to say?

[DEFENDANT]: Yes, sir. *** I was trying to do something productive, something positive with my life. But on this particular incident, this one time, I had just got caught up in the street. I wish I hadn't did it, but at that time it was something that I had to do to feed my family at that time [because] my check wasn't adding up to what it suppose to added up.

* * *

[THE COURT]: *** I think that anybody that says that they're going to justify this type of activity because they're supporting a family is fooling themselves. Nor do I believe that this activity is primarily to support a drug habit. There's no question that a lot of people that are involved in, you know, the sale and the distribution of drugs in the neighborhood may be addicted to drugs. That could be.

-10-

But what I think that motivates people primarily to do stuff like this is money. There's a lot of money rolling in when you've got people all over the streets just every 15, 20 minutes dropping by and [dropping] off 10, 15, 20 dollars to pick a little bag of heroin. Money. But even on the tape it's clear there's another way to support a family. On one of those tapes there were people out there, <u>not African-American</u>, in your community working, cutting grass or doing something, making a living to support their family while you and your coconspirators were standing around with your drawers hanging down to your butt, all waiting for somebody to come by and drop off five dollars for a bag. People in your own neighborhood working. So to say that's the only way to take care of your family is a lie. You fooling yourself. But guess what. You not fooling me." (Emphasis added.)

Defendant contends that the above remark shows that the trial court improperly considered his race, African-American, during his sentencing, and, therefore, his sentence should be vacated and a new sentencing hearing should be held. The State responds that defendant waived review by failing to object to the trial court's comments during sentencing. See <u>People v. Jackson</u>, 182 Ill. 2d 30, 69 (1998). Reviewing courts relax the waiver rule when the basis for the objection is the trial judge's conduct. <u>People v. Wardell</u>, 230 Ill. App. 3d 1093, 1102 (1992). Therefore, we will address the issue on the merits.

First, in order to review this issue, this court must examine what the defendant said:

> "[DEFENDANT]: *** I was trying to do something productive, something positive with my life. But on this particular incident, this one time, I had just got caught up in the street. I wish I hadn't did it, but at that time it was something that I had to do to feed my family [because] my check wasn't adding up to what it suppose to added up."

Next, this court must examine the judge's response to the defendant's comments:

> "[THE COURT]: *** I think that anybody that says that they're trying to justify this type of activity because they're supporting a family is fooling themselves. Nor do I believe that this activity is primarily to support a drug habit."

The judge also stated:

> "On one of those tapes there were people out there, not African-American, in your community working, cutting grass or doing something, making a living to support their family while you and your coconspirators were standing around with your drawers hanging down to your butt, all waiting for somebody to come by and drop off five dollars for a bag."

In our considered opinion, the aforementioned colloquy does not establish that the trial judge used race as an improper sentencing factor. Instead, the trial judge did nothing more than explain

-12-

why he did not believe the defendant's excuse for selling drugs. People v. Jackson, 149 Ill. 2d 540, 548 (1992) (sentencing court properly considers the defendant's moral character, his social environment, and his motivations for committing crime). The trial judge concluded his response to the defendant's stated excuse for selling drugs by explaining that there were other people, non African-Americans, in the videotaped evidence making a living doing things like cutting grass. The trial judge's "non African-American" comment had nothing to do with defendant's sentence. Defendant's sentence of 13 years was within the statutory guidelines (4 to 15 years) for a person convicted of a Class 1 felony. 730 ILCS 5/5-8-1(a)(4) (West 2004). Accordingly, we hold that because defendant's 13-year sentence was within the statutory guidelines for a defendant convicted of Class 1 offense, the trial judge did not use race as an improper sentencing factor.

The dissent, like the defendant, relies on People v.Wardell, 230 Ill. App. 3d 1093 (1992), as support for the argument that an improper sentencing factor was used by the trial court in this case. The facts in Wardell are distinguishable from the facts in this case. In Wardell, the appellate court reviewed a trial record involving an interracial crime where (1) the defendants were black men and the victims of their crimes were white women; (2) where race was a fact that the victims and witnesses commented about during the trial; and (3) where the trial judge commented, before pronouncing sentence, that the defendants decided, after robbing the victims, "to have some more fun with some white girls." Wardell, 230 Ill. App. 3d at 1097, 1102. The black codefendants, Wardell and Reynolds, had both been convicted of the same crimes: aggravated criminal sexual assault, attempted aggravated criminal sexual assault, armed robbery ($6) and attempted armed robbery. Wardell, 230 Ill. App. 3d at 1097. While Wardell received three consecutive sentences

totally 69 years, Reynolds, for the same crimes, was sentenced to two consecutive terms, including an extended term for aggravated criminal sexual assault, totally 69 years in prison. Wardell, 230 Ill. App. 3d at 1097. Considering the trial court's remarks and the sentences imposed for crimes arising from the same transaction, it was noted in Wardell that, "Rape incites, as it should, a feeling of outrage, but the offensiveness of that act is not transformed by the different skin colors of those persons involved. '[A]ppeals to racial prejudice, whether open or oblique, discredit our justice and are to be condemned.' " Wardell, 230 Ill. App. 3d at 1103, quoting People v. Dukett, 56 Ill. 2d 432, 443 (1974). Finally, the Wardell court held that, "Due to the trial judge's improper consideration of the cross-racial nature of the crimes, we vacate defendants' sentences and remand the cause for a new sentencing hearing." Wardell, 230 Ill. App. 3d at 1103.

Unlike the facts in Wardell, in our case, there was no cross-racial, violent crime. Here, the police officers who purchased the drugs from Grimes were not "victims" of a cross-racial crime. We also note that the trial judge's challenged comments in this case were made in response to defendant's excuse for selling drugs. Further, we note that the trial judge's comments were based on videotaped evidence admitted during defendant's trial. After examining the statutes prescribing the sentences for the crimes defendant was convicted of, we found that defendant's sentence was within the statutory guidelines for a person convicted of a Class 1 felony. In light of the fact the trial judge's comment about race (1) was based on trial evidence, (2) directly refuted the defendant's justification for selling drugs, and (3) did not affect the defendant's sentence because the sentence was within the statutory guidelines, we find that the defendant's and the dissent's reliance on Wardell is misplaced.

1-05-3888

The defendant also maintains that the trial court's comments resulted in a greater than warranted sentence. The defendant is in error because his sentence was within the statutory guidelines given the crimes he was convicted of and his criminal background. Hamilton, 361 Ill. App. 3d at 846 (sentence within the guidelines is presumed to be proper). Similarly, the dissent recommends, sub silencio, that the majority ignore applicable sentencing statutes (720 ILCS 570/405(c)(1), 401(c)(1) (West 2004); 730 ILCS 5/5-8-1(a)(3) (West 2004)) and case precedent. Hauschild, 226 Ill. 2d at 90; People v. Gilliam, 172 Ill. 2d 484, 521 (1996).

We note that the dissent does not address the majority's cases which hold that a sentence within the statutory guidelines is presumptively valid. Hauschild, 226 Ill. 2d at 90; Stacey, 193 Ill. 2d at 209-10; People v. Coleman, 166 Ill. 2d 247, 258 (1995); Csaszar, 375 Ill. App. 3d at 948; Hamilton, 361 Ill. App. 3d at 846. Similarly, the dissent ignores pertinent facts: (1) that defendant's sentence was within the statutory guidelines; (2) that the videotape discussed by the trial court was admitted into evidence; (3) that the persons videotaped at the crime scene were of different races; and (4) that the trial judge's comments were based on the facts in the record. Roth v. Roth, 45 Ill. 2d 19, 25 (1970), citing People v. Cooper, 398 Ill. 468, 472 (1947) (trial court must consider matters within the record when making decisions or reaching judgments). Instead of supporting her position with facts, cases or statutes which establish that defendant's sentence was outside the statutory guidelines, the dissent proposes a per se rule that would preclude trial judges from commenting upon race, gender, and other often pertinent facts admitted in evidence. See 730 ILCS 5/5-5-3.2(a)(10) (West 2004) (authorizing consideration of racial motivation in aggravation). We decline, until the supreme court promulgates such a rule, to adopt a per se rule prohibiting trial court judges from commenting

1-05-3888

upon facts admitted in evidence, even racial evidence, when making a decision.

In conclusion, (1) because defendant's 13-year sentence was within the statutory guidelines for a person convicted of a Class 1 felony and was presumptively correct, and (2) because defendant had three prior convictions for possession of a controlled substance, there was no abuse of discretion and there is no need to remand this case for resentencing. See Gilliam, 172 Ill. 2d at 521; Garibay, 366 Ill. App. 3d at 1108 (when a sentence falls within the statutory guidelines for the offense, it will not be disturbed absent an abuse of discretion by the trial court). Finally, the clerk of the circuit court is directed to correct the mittimus to show (1) that the defendant was convicted of a Class 1 felony, and (2) that the defendant is entitled to 330 days of sentencing credit for time spent in custody prior to sentencing.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed; mittimus corrected.

CAMPBELL, J., concurs.

Justice O'Brien, dissenting:

The sentence should be vacated and the case remanded for sentencing before a different judge because the trial court made a racial remark during sentencing that indicates he considered an improper factor. Specifically, during sentencing, the trial court engaged in the following colloquy with the defendant:

"[The Court]: Mr. Grimes, anything you wish to say?

[Defendant]: Yes, sir. *** I was trying to do something productive, something positive with my life. But on this particular incident, this one time, I had just got caught up

-16-

in the street. I wish I hadn't did it, but at that time it was something that I had to do to feed my family at that time [because] my check wasn't adding up to what it suppose to added up.

* * *

[The Court]: *** I think that anybody that says that they're going to justify this type of activity because they're supporting a family is fooling themselves. Nor do I believe that this activity is primarily to support a drug habit. There's no question that a lot of people that are involved in, you know, the sale and the distribution of drugs in the neighborhood may be addicted to drugs. That could be. But what I think that motivates people primarily to do stuff like this is money. There's a lot of money rolling in when you've got people all over the streets just every 15, 20 minutes dropping by and [dropping] off 10, 15, 20 dollars to pick a little bag of heroin. Money. But even on the tape it's clear there's another way to support a family. On one of those tapes there were people out there, not African-American, in your community working, cutting grass or doing something, making a living to support their family while you and your co-conspirators were standing around with your drawers hanging down to your butt, all waiting for somebody to come by and drop off five dollars for a bag. People in your own neighborhood working. So to say that's the only way to take care of your family is a lie. You fooling yourself. But guess what. You not fooling me." (Emphasis added.)

This case is similar to People v. Wardell, 230 Ill. App. 3d 1093, 1102 (1992). In Wardell, two defendants were convicted of aggravated criminal sexual assault, armed robbery, attempted aggravated criminal sexual assault and attempted armed robbery. Wardell, 230 Ill. App. 3d 1095. During sentencing, the trial judge noted the armed robbery of one victim and the attempted armed

robbery of another, and then stated: "You weren't satisfied with that. You were going to have some more fun with some white girls." Wardell, 230 Ill. App. 3d at 1097. The trial court then sentenced each defendant to a total of 69 years in prison. Wardell, 230 Ill. App. 3d at 1097.

The appellate court held that the sentencing judge " ' owes the same duty to the defendant to protect his own mind from the possible prejudicial effect of incompetent evidence that he would owe in protecting a jury from the same contaminating influence.' " Wardell, 230 Ill. App. 3d at 1103, quoting People v. Riley, 376 Ill. 364, 369 (1941). The appellate court further held that "[w]e must assume that defendants' race was considered by the judge ***. If it is on his tongue, it most assuredly must be on his mind." Wardell, 230 Ill. App. 3d at 1103. Noting that the defendant is entitled to a new sentencing hearing when the sentencing judge relies on an improper factor (Wardell, 230 Ill. App. 3d at 1102), such as race, the appellate court vacated the defendants' sentences and remanded for a new sentencing hearing. Wardell, 230 Ill. App. 3d at 1103.

The learned majority writes that the language used by the judge really does not matter because the outcome was appropriate. But, substantive due process and procedural due process are both important and each litigant deserves both, as well as the public which deserves to see and hear both. Imagine that you were in this courtroom watching and hearing this sentencing. What would you think of the fairness of your court system?

This is not an indictment of this particular trial judge. Perhaps, it was a slip of the tongue, a mistake. Still, comments from the bench about race, religion, gender, physical attributes are just plain wrong, no matter the outcome. This defendant deserves a new sentencing hearing with a different judge, so that the procedure and the outcome are both beyond reproach.

I would vacate the sentence and remand to a different judge for sentencing.