*In re* C.C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Kimberly A. Cundiff, Respondent-Appellant).

Fourth District    No. 4—06—0535

Opinion filed November 20, 2006.

Daniel B. Kennedy, of Champaign, for appellant.

Julia Rietz, State's Attorney, of Urbana (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Respondent mother, Kimberly A. Cundiff, appeals the Champaign County circuit court's finding of unfitness and termination of parental rights pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1—1 through 7—1 (West 2004)). Cundiff's only claim on appeal is that she was denied effective assistance of counsel. We affirm.

## I. BACKGROUND

Cundiff is the biological mother of C.C. (born November 21, 2002). The putative father, Eddie (last name unknown), has never been involved in C.C.'s life, and Eddie's parental rights, though not at issue here, were terminated in the same proceeding as were Cundiff's. Cundiff also has another son, A.C. (born in 2004), who is not at issue in the present case. However, for the sake of recognizing Cundiff's lack of parental responsibility, we note that Cundiff left A.C., a newborn at the time, indefinitely in the care of her sister in Kentucky. Cundiff's sister reported that Cundiff was using cocaine and never came back for her child. Cundiff's sister subsequently obtained legal guardianship of A.C. through the Kentucky court system.

On November 4, 2004, Cundiff left C.C. with Jeanne Cooley, a non-relative friend, "for the evening." When Cundiff still had not returned as of November 9, 2004, apparently without giving any indication of her whereabouts, Cooley called the Department of Children and Family Services (DCFS). Investigators made several attempts to locate Cundiff, hearing that she was perhaps in a "crack house" in Danville, Illinois. Cundiff called Cooley on November 25, 2004, but told Cooley

that she would not meet with DCFS about this case. DCFS took protective custody of C.C. on November 30, 2004.

The State of Illinois charged Cundiff with abandonment on December 1, 2004. At a hearing in March 2005, the circuit court adjudicated C.C. a neglected minor and ordered Cundiff to engage in a variety of services. Cundiff did not attend the hearing.

Likewise, Cundiff did not attend the hearing on the motion seeking a finding of unfitness held on March 22, 2006. At the hearing, Cundiff's attorney stipulated to 27 requests to admit filed by the guardian *ad litem* (GAL). The stipulation was based on four reports: (1) a home and background report submitted on February 28, 2006; (2) a permanency-review report submitted on May 27, 2005; and (3) a permanency-review report dated October 3, 2005, with an addendum dated November 15, 2005. Also, Cundiff's attorney stipulated that the authors of the four reports would testify consistently with the reports.

The admitted facts stated in sum that Cundiff (1) missed 3 of 7 visits between January 1, 2005, and February 24, 2005; (2) missed 10 of 15 visits between February 28, 2005, and March 27, 2005; (3) missed 4 of 9 visits between June 30, 2005, and September 21, 2005; (4) missed 4 of 5 visits between October 7, 2005, and November 15, 2005; (5) did not supply a permanent or current address or telephone number to service providers between March 3, 2005, and June 3, 2005; (6) did not sign any of the authorizations for release of information necessary for referral to services between March 3, 2005, and June 3, 2005; (7) exhibited poor cooperation with Prairie Center Health Systems in that Cundiff twice failed to undergo her scheduled drug and alcohol assessment, twice failed to submit a urine sample, missed 7 of 10 counseling sessions, and was later dropped for nonattendance; (8) was dropped from parenting class for poor attendance; and (9) was later referred to another parenting class but missed the first session of that one as well. The record is unclear as to whether Cundiff ultimately completed this second parenting class.

Cundiff's counsel presented no evidence and waived argument, stating:

> "Your Honor, at this point, I'm going to waive argument. I have not had enough contact with my client to be able to rebut any of these things."

The circuit court found Cundiff was unfit in that Cundiff failed to make reasonable efforts to correct the conditions that were the basis of C.C.'s removal; failed to make reasonable progress toward the return of C.C.; and failed to maintain a reasonable degree of interest, concern, or responsibility as to C.C.'s welfare. 750 ILCS 50/1(D)(b), (D)(m)(i), (D)(m)(ii) (West 2004).

Cundiff also failed to attend the best-interest hearing in April 2006. The State tendered reports from DCFS and from Lutheran Social Services. The defense did not present any evidence. The State and the GAL argued that it was in C.C.'s best interest that parental rights be terminated. The GAL argued that Cundiff's missed visits devastated C.C. Cundiff had not completed any services. Further, C.C. was established in a stable, loving foster home with foster parents that wanted to adopt him. Cundiff's attorney did not enter a closing argument, instead stating:

"Your Honor, I have not had any contact with Ms. Cundiff. I believe she contacted me before the March 22 date several days prior to that, indicated that she would be at that hearing and then was not. That's the only contact I've had with her. That was a very brief conversation. And I have no real idea of what her wishes are in this so I would waive argument at this point beyond that."

In reaching its decision in the best-interest hearing, the circuit judge noted that he had presided over this entire case from start to finish and was familiar with the record. The judge noted that the only thing Cundiff had ever done that was in C.C.'s best interest was to make some attempt at visitation. However, the judge seemed puzzled that Cundiff's participation in visitation had stopped for unknown reasons, stating:

"[Either] she truly is no longer interested which I would find surprising or *** she just thought it was a losing battle so to speak."

Ultimately, the judge found by a preponderance of the evidence that it was in the interest of both C.C. and the public that Cundiff's parental rights be terminated. This appeal followed.

## II. ANALYSIS

Cundiff's only claim on appeal is that her trial counsel was ineffective. As alluded to by both parties, ineffective assistance of counsel can be established two ways. See *People v. Montanez*, 281 Ill. App. 3d 558, 562-63, 667 N.E.2d 548, 551 (1996), citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and *United States v. Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984).

The first and more common way was set forth in *Strickland*, which held that to prevail on an ineffective-assistance claim, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional errors, the result of the proceedings would have been different. *People v. Reid*, 179 Ill. 2d 297, 310, 688 N.E.2d 1156, 1162 (1997), citing *Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. A defendant must overcome the strong presumption that counsel's challenged ac-

tions were part of a sound trial strategy and not due to incompetence. *People v. Coleman*, 183 Ill. 2d 366, 397, 701 N.E.2d 1063, 1079 (1998).

Cundiff asks this court to apply the second way to establish ineffective assistance of counsel, as set forth in *Cronic*. In *Cronic*, the court held that where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, there is a denial of sixth-amendment rights that makes the adversarial process itself unreliable. *People v. Kozlowski*, 266 Ill. App. 3d 595, 600, 639 N.E.2d 1369, 1373 (1994), citing *Cronic*, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047. Under this exceptional circumstance wherein a criminal proceeding loses its character as a confrontation between adversaries, prejudice is presumed, and as a logical consequence, the two-part test stated in *Strickland* need not be applied. *Kozlowski*, 266 Ill. App. 3d at 599-600, 639 N.E.2d at 1372-73; see also *Cronic*, 466 U.S. at 656-57, 80 L. Ed. 2d at 666-67, 104 S. Ct. at 2045-46 (regarding criminal proceeding's character as a confrontation between adversaries).

We decline to extend the *Cronic* test to termination proceedings. It seems counterintuitive to apply a test that depends upon a determination of whether the proceeding was sufficiently adversarial in nature when the legislature has specified that proceedings under the Act are not meant to be adversarial in nature. See 705 ILCS 405/1—5 (West 2004). A respondent parent's right to counsel in termination proceedings derives from the Act, not the constitution. *In re A.H.*, 359 Ill. App. 3d 173, 182, 833 N.E.2d 915, 922 (2005); 705 ILCS 405/1—5 (West 2004). Hence, the sixth-amendment analysis and rationale delineated by *Cronic* and its progeny, stating that "[t]he right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing," does not apply here. *Cronic*, 466 U.S. at 656, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045.

Cundiff is, however, entitled to effective assistance of counsel. *In re R.G.*, 165 Ill. App. 3d 112, 127, 518 N.E.2d 691, 700 (1988) (It would seem a useless gesture to recognize the right to counsel in termination proceedings but not require that counsel to perform effectively). In determining whether Cundiff's counsel was effective, we are to employ the standard *Strickland* test. *R.G.*, 165 Ill. App. 3d at 127, 518 N.E.2d at 700-01; *In re D.M.*, 258 Ill. App. 3d 669, 673-74, 631 N.E.2d 341, 344 (1994).

We choose to resolve Cundiff's ineffective-assistance claim by reaching only the prejudice prong of the *Strickland* test, for lack of prejudice renders irrelevant the issue of counsel's performance. *Coleman*, 183 Ill. 2d at 397-98, 701 N.E.2d at 1079, citing *People v. Albanese*, 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256 (1984). Cundiff's

claim clearly fails the second prong of the *Strickland* test. The State presented overwhelming evidence of Cundiff's unfitness. Cundiff disappeared from authorities and service providers for indefinite periods of time, failing to provide adequate contact information. Cundiff failed to participate in drug-treatment programs and parenting classes and often missed visits with her son without providing an excuse. It seems as though no winning argument could be made to dispute Cundiff's failure to make reasonable progress toward C.C.'s return home, to make reasonable efforts to improve the conditions that led to C.C.'s removal, or to maintain a reasonable degree of concern, interest, or responsibility. Cundiff's participation in services only worsened as time passed. Likewise, it is difficult to see how the result of the best-interest hearing would be any different, regardless of counsel's performance. Psychological experts stated in admitted reports that Cundiff required at least two years of treatment before she would be capable of caring for a child. However, Cundiff has not demonstrated any ability to follow through with treatment. Moreover, C.C. has been placed with a loving foster family who wishes to adopt him.

## III. CONCLUSION

For the aforementioned reasons, Cundiff's ineffective-assistance claim fails. We affirm the trial court's judgment.

Affirmed.

TURNER, P.J., and APPLETON, J., concur.