NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 190506-U

NOS. 4-19-0506, 4-19-0507 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 13, 2019
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| *In re* R.M., a Minor | ) |
| | ) Appeal from the |
| (The People of the State of Illinois, | ) Circuit Court of |
| Petitioner-Appellee, | ) Coles County |
| v.  (No. 4-19-0506) | ) Nos. 14JA21 |
| Ashley M., | )     14JA34 |
| Respondent-Appellant). | ) |
| ------------------------------------------------------------------ | ) |
| *In re* J.S., a Minor | ) |
| | ) |
| (The People of the State of Illinois, | ) |
| Petitioner-Appellee, | ) |
| v.  (No. 4-19-0507) | ) |
| Ashley M., | ) Honorable |
| Respondent-Appellant). | ) Matthew L. Sullivan, |
| | ) Judge Presiding. |

---

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Holder White and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) Respondent did not suffer an infringement of her constitutional rights or liberty interests related to the parenting of the minors.

(2) The trial court's order terminating respondent's parental rights was not against the manifest weight of the evidence.

(3) Respondent failed to demonstrate that her attorney rendered ineffective assistance of counsel.

(4) The trial court did not err when it did not warn respondent the termination hearing would proceed in her absence.

¶ 2        Respondent, Ashley M., is the mother of the minors R.M. and J.S. She appeals the

trial court's order terminating her parental rights to both minors. She contends (1) unreasonable

delays during the neglect and termination proceedings violated her constitutional rights to due

process under the fourteenth amendment of the United States Constitution, (2) the court's order

finding her to be an unfit parent was against the manifest weight of the evidence, (3) her attorney

rendered ineffective assistance of counsel, and (4) the court erred in proceeding on the State's

motion to terminate in her absence. The State filed individual trial court cases for each minor, and

respondent filed separate appeals from each case. Because her arguments in each appeal are

identical, we consolidated the appeals and now affirm the court's judgment.

¶ 3                                     I. BACKGROUND

¶ 4        The minor, J.S., was born to respondent and David S. on November 20, 2013, at 23

weeks gestation. David S. is not a party to this appeal. There were several incidents of violence

and noncompliance by and between respondent, David, and the hospital staff while J.S. remained

in the neonatal unit. In January 2014, the Illinois Department of Children and Family Services

(DCFS) opened an intact case though J.S. remained in the hospital. In July 2014, DCFS ordered

respondent and David to stay at the hospital with J.S. to bond and participate in training for his

extensive medical needs. However, respondent expressed her desire to harm herself and others,

including her child. Based upon these representations and the altercations between respondent and

David, respondent was not allowed to be with J.S. unsupervised.

¶ 5        J.S. required 24-hour medical care, but by July 23, 2014, he was ready for

discharge. He was tracheostomy, ventilator, and gastric-tube dependent and needed at least two

full-time caretakers. DCFS and its contracting agency, One Hope United, notified the parents they

were closing the intact case and taking protective custody of J.S. Ashley, who was again pregnant

at the time, threatened to kill herself and her unborn child, and she reported David had threatened to kill her. For his reaction to the news of protective custody, David screamed obscenities and profanities at the representatives. DCFS called the police.

¶ 6         On July 25, 2014, the State filed a petition for the adjudication of neglect, alleging J.S. was in an injurious environment (705 ILCS 405/2-3(1)(b) (West 2012)) and would not receive the proper or necessary support (705 ILCS 405/2-3(1)(a) (West 2012)) if he resided with respondent and David due to their violent outbursts, history and pattern of domestic abuse, and their inability to address J.S.'s medical needs. The trial court entered a temporary custody order granting DCFS temporary custody of J.S. with the right to place him and with the authorization to consent to his medical care.

¶ 7         R.M. was born on September 14, 2014, also premature, and was required to remain in the hospital until October 26, 2014. Upon his release, he was immediately taken into protective custody and placed in traditional foster placement. J.M. was transferred to a skilled nursing facility in Naperville. Respondent and David were offered weekly visits to Naperville facilitated by Addus Healthcare, Inc. (Addus). However, those visits were suspended after respondent threatened an Addus worker. According to DCFS's update on respondent's housing, as reported in a January 2015 case plan, respondent and David rented a home in Mattoon. The home was labeled appropriate but DCFS workers did not visit the home due to the threats and domestic violence.

¶ 8         J.S. did well in Naperville and was subsequently placed in a specialized foster home in Rock Island. Both foster parents were nurses and were capable of caring for his medical needs. By August 2015, respondent had not engaged in any recommended treatment or services. She continued to be arrested for domestic-violence issues, including arson when she attempted to set the bedroom on fire. The workers described respondent as difficult, noncompliant, and hostile.

¶ 9        On August 26, 2015, the trial court entered an adjudicatory order upon respondent's admission to the allegations of neglect on the basis of her history and pattern of violent outbursts. Accordingly, the court found both minors neglected. On September 17, 2015, the court entered a dispositional order, finding respondent unfit, unable for reasons other than financial circumstances alone, or unwilling to care for the minors. The court relied on respondent's significant and unresolved domestic-violence and mental-health issues. The court made the minors wards of the court.

¶ 10       According to respondent's case plans, she was to participate in a substance-abuse evaluation and treatment as recommended, intensive domestic-violence counseling, parenting classes, and mental-health therapy. She was involved in criminal cases, including charges related to disorderly conduct, arson, and violations of probation. She was noncompliant with services as of January 2016. She had not visited with J.S. regularly or demonstrated her ability to parent him successfully given his extensive medical needs. She visited with R.M. more frequently due to his closer proximity.

¶ 11       Between January 2016 and November 2016, respondent was doing well with her services. She participated in therapy, secured a four-bedroom home for the family, participated in a psychological evaluation, attended weekly parenting classes, and requested more visits with J.S. DCFS was considering returning the minors to her. On September 30, 2016, she gave birth to her third son, L.S. He remained in her care.

¶ 12       However, on December 16, 2016, respondent and David were involved in a domestic dispute. Respondent called the police, stating David was choking her and hitting her in the head. David was intoxicated. According to an April 2017 DCFS status report, respondent told police she "didn't care what happened to their baby" and she reportedly "yank[ed]" him by the

arm out of his car seat. Respondent told police she did not want to care for her baby and left the home. L.S. was taken into protective custody. The incident began with the couple arguing about David driving around intoxicated with L.S. in the vehicle. Apparently, respondent drove the family to Walmart and left L.S. in the vehicle with David when she went inside. David moved the car while respondent was in the store. When she returned to the vehicle, they argued, and David began choking her while she was driving. Respondent called the police. David could be heard in the background yelling that he had a gun and he was going to shoot the responding police officers. Later, at home, when the argument turned physical again, respondent again called the police. Respondent told police this was the first domestic dispute they had had in two years. However, police indicated in their report, there had been calls to the home four times in 2016 for domestic-battery allegations.

¶ 13        Between November 1, 2016, and April 1, 2017, numerous calls to the police were made from the residence, alleging domestic violence and suicidal ideation. Respondent's visits were suspended due to her "out of control" behavior. She had completely stopped all services and her medication. According to a DCFS status report, respondent threatened DCFS, her children, and her parents. She posted on Facebook "concerning messages," including a fake death certificate, claiming J.S. had died.

¶ 14        On April 10, 2017, the State filed a motion for termination of parental rights. The charges against respondent alleged she was unfit for the following reasons: (1) she was depraved, having at least three felony convictions with one of those convictions occurring within five years of the filing of the petition (750 ILCS 50/1(D)(i) (West 2016)) and (2) she failed to make reasonable progress toward the return of the minors during any nine-month period following the

adjudication of neglect (750 ILCS 50/1(D)(m)(ii) (West 2016)). The particular nine-month periods were not specified.

¶ 15 On April 14, 2018, the trial court conducted a fitness hearing. Respondent was present with her attorney, who requested a continuance to secure additional witnesses. The court denied her request and proceeded with the hearing. On the State's motion, the court took judicial notice of respondent's three Coles County felony convictions: (1) case No. 10-CF-439, a conviction for the Class 2 felony offense of aggravated battery of a governmental employee; (2) case No. 11-CF-329, a conviction for the Class 3 felony offense of aggravated battery in a public place; and (3) case No. 15-CF-265, a conviction for the Class 3 felony offense of arson.

¶ 16 The only witness to testify for the State was case manager Debbie Smith, a child welfare specialist with DCFS. She testified neither minor had resided with respondent during any part of their respective lives. In Smith's opinion, since July 20, 2017, respondent had made neither reasonable progress nor reasonable efforts (failure to make reasonable efforts was not alleged as a basis for unfitness) toward the return of the minors. Respondent's "main issue" was the need to address her untreated mental-health issues. She had repeatedly threatened workers and the minors. Another major issue for her was addressing domestic violence. Her home was not safe for the minors due to the violence between her and David.

¶ 17 Respondent testified she was 25 years old and was married to David. She testified she had been diagnosed with bipolar disorder and severe depression. Her psychiatrist had most recently prescribed bi-monthly injections for treatment. She said she was willing to participate in counseling or therapy for her mental-health issues.

¶ 18 Respondent acknowledged her two convictions for aggravated battery in 2010 and 2011. At the time she committed those offenses, she was 17 years old. She was currently serving

a term of probation for her 2015 arson conviction. She was complying with the terms of her probation, which included participating in psychiatric treatment. She testified she had visited with J.S. approximately nine times since July 2017 and possibly a few more with R.M. She acknowledged that J.S. was born with serious medical issues and that he had made great progress. He was now physically active. She testified she successfully completed her parenting course. She said the majority of the domestic incidents at home were verbal altercations not physical confrontations. However, she admitted she and David's relationship was very volatile.

¶ 19       After considering the evidence and the parties' arguments, the trial court suggested to the State that it request the matter be rescheduled in three weeks for the purpose of providing notice as to the applicable nine-month period. Taking the court's suggestion, the State asked for leave to "reopen proofs and leave to amend by filing a specific notice." The court allowed the request and stated: "I'm going to allow that because I don't think you can claim some prejudice from not being given the dates and then say, well, it's unfair to let them give me the dates." The parties agreed in open court to continue the matter until June 15, 2018.

¶ 20       On April 17, 2018, the State filed a "Notice of Nine Month Periods of Failure To Make Reasonable Progress." The alleged nine-month periods were (1) August 27, 2015, through May 27, 2016, (2) July 10, 2016, through April 10, 2017, and (3) April 10, 2017, through April 13, 2018 (the last being an almost 12-month period).

¶ 21       On June 15, 2018, the trial court conducted a continued fitness hearing. Respondent did not appear personally, but appeared through counsel only. Respondent's attorney moved to continue in her absence. The court denied that request.

¶ 22          Smith testified again for the State. She stated respondent had failed to make reasonable progress toward the return of either minor since July 21, 2017. Respondent's counsel did not cross-examine Smith.

¶ 23          At the close of the hearing, the trial court stated: "I will find the State has met their burden, that neither parent is a fit parent." The court proceeded immediately to the best-interest hearing.

¶ 24          Smith again testified for the State. She said neither minor had ever resided with either parent. She said they each were in foster care but not together. She said J.S. was "doing very well." He was in a traditional foster home, with both parents being nurses, after having successfully transitioned from specialized care. She said he was thriving in this "very stable" home. She also said R.M. was "doing really well" in his home. She said: "He's a happy little boy. Very stable, very bonded to the foster family as well." She said neither minor should leave their respective foster home. They visit each other and relate "[l]ike siblings." Smith testified that each foster family was willing to adopt. Smith said R.M. was in the same home with his younger brother L.S.

¶ 25          The trial court found it to be in the minors' best interests that respondent's parental rights be terminated. On June 15, 2018, the court entered a written order terminating respondent's parental rights.

¶ 26          On July 2, 2018, respondent's counsel filed a motion to reconsider, stating (1) respondent "claims ineffective assistance of counsel" and (2) there was insufficient evidence to support the trial court's judgment. Neither claim was supported by facts or further explanation.

¶ 27          On July 19, 2018, the trial court vacated respondent's counsel's appointment and assigned the matter to new counsel. Respondent's newly appointed counsel filed a motion to reconsider, claiming the court's order terminating her parental rights was against the manifest

weight of the evidence. He also filed a motion to vacate the judgment, claiming the State's notice specifying the nine-month periods was not served on him or respondent prior to the June 15, 2018, hearing. He also asked the court to vacate its termination order because it was entered in respondent's absence. Counsel claimed respondent was not warned the hearing would proceed in her absence. Finally, he alleged her prior counsel was ineffective for failing to present evidence of her rehabilitation, which would have arguably rebutted the presumption of depravity.

¶ 28        On July 2, 2019, respondent testified at a hearing on her posttrial motions that she had asked her prior counsel to call her counselor as a witness at the fitness hearing to testify regarding respondent's efforts to rehabilitate herself. But, respondent said, her attorney failed to do so. Respondent also testified she had not received a copy of the State's notice of the nine-month periods. Nevertheless, the trial court denied respondent's motion to reconsider and motion to vacate, stating it held to its original finding "that there was at least a nine-month period where no reasonable or substantial progress was made for the return of the child."

¶ 29        This appeal followed.

¶ 30                              II. ANALYSIS

¶ 31        Respondent makes four arguments on appeal. First, she claims there were unreasonable infringements throughout the prosecution of her fundamental liberty interests to parent her children. Second, she claims the trial court's order terminating her parental rights was against the manifest weight of the evidence. Third, she claims her attorney rendered ineffective assistance of counsel. And finally, she claims the trial court failed to admonish her that the termination hearing would proceed in her absence.

¶ 32                  A. Infringement of Respondent's Parental Rights

¶ 33    Respondent claims (1) the State failed to conduct the adjudicatory hearing in a timely manner, (2) the State failed to conduct the termination hearing in a timely manner, and (3) the trial court failed to admonish respondent that the termination hearing would proceed in her absence. She claims the combination of these procedural failures (claimed violations of the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2012)), infringed upon her liberty interest in maintaining a parent-child relationship. See *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (it is well established that a parent's interest in maintaining a parental relationship with her child is a fundamental liberty interest protected by the due-process clause of the fourteenth amendment). However, respondent's arguments are without merit.

¶ 34                    1. *Adjudicatory Hearing*

¶ 35    Section 2-14(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-14(b) (West 2012) provides as follows:

> "When a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be commenced within 90 days of the date of service of process upon the minor, parents, any guardian and any legal custodian, unless an earlier date is required pursuant to Section 2-13.1. Once commenced, subsequent delay in the proceedings may be allowed by the court when necessary to ensure a fair hearing."

¶ 36    Section 2-14(c) provides that "[i]f the adjudicatory hearing is not heard within the time limits required by subsection (b) or (c) of this Section, *upon motion by any party* the petition shall be dismissed without prejudice." (Emphasis added.) 705 ILCS 405/2-14(c) (West 2012). See also *In re S.W.*, 342 Ill. App. 3d 445, 452 (2003) (petitioner waived the time requirements of section 2-14 by failing to file motion to dismiss in the trial court).

¶ 37    Despite acknowledging the statutory requirement to file a motion to dismiss and her failure to do so, respondent nevertheless asks this court to find that the "more than one year" delay violated her constitutional due-process rights. The clear language of the statute does not provide for exceptions to the motion to dismiss requirement no matter the length of the delay. Our legislature has stated that, if respondent wishes to hold the State and/or the trial court accountable for the time requirements of section 2-14, she must file a motion to dismiss the State's petition. 705 ILCS 405/2-14(c) (West 2012). This court will not add time requirements that do not otherwise appear in the statute.

¶ 38                              2. *Termination Hearing*

¶ 39    Respondent also contends "there was a second abnormally long delay, which occurred after the State filed its Motion for Termination of Parental Rights on April 10, 2017. The hearing on that [m]otion was not conducted for over a year." Respondent attributes the State's delay to the State's lack of evidence in support. She claims the State did not, and could not, specify a nine-month period within which she failed to make reasonable progress toward the return of the minors until after the petition was filed. She argues: "In other words, the State was alleging events in their [m]otion that had not occurred. This provides some proof of the bias and adversarial role being adopted by [DCFS] and the State toward[ ] [respondent]."

¶ 40    Respondent's argument is unclear. Assuming she is arguing the State and DCFS intentionally waited one year to have the petition heard in order to gather evidence, that argument is not supported by the record. Respondent asserts DCFS and the State "had an interest in obtaining and viewing evidence in the light most favorable to the allegations contained in the Motion for Termination of Parental Rights." Indeed, the State, representing the interests of DCFS, has the burden of proving by clear and convincing evidence that a parent is unfit. *In re Gwynne P.*, 215

Ill. 2d 340, 354 (2005). It is only logical then that DCFS and the State assert an adversarial role, in the best interests of the minor, against a parent who they believe is unfit.

¶ 41        The statute does not provide a time frame within which the hearing on the State's petition to terminate must be held. As such, we can find no constitutional violation related to the time frame within which the hearing was conducted. In fact, in this case, it potentially could have been in respondent's favor to have the hearing at least one year later than the petition was filed. That is, the trial court may have considered evidence of respondent's reasonable progress after the filing of the petition but before the conduct of the hearing. See *id.* at 360 (considering the grounds of repeated incarceration, the trial court did not err in considering evidence leading up to the hearing rather than limiting its inquiry to the time frame preceding the filing of the petition). With the passing of twelve months after the filing of the petition, respondent had that much additional time and opportunity to comply and/or demonstrate her intent to successfully comply with DCFS services. We find no error.

¶ 42                        3. *Lack of Notice of Nine-Month Period*

¶ 43        Third, respondent claims the State's failure to notify her of the specific nine-month periods upon which it relied was further evidence of a due-process violation. We disagree.

¶ 44        In its motion for termination of parental rights, the State alleged respondent failed to make reasonable progress toward the return of the child to the parent "within any [nine-]month period following the adjudication of the minor as an abused, neglected, or dependent minor. (August 27, 2015)[(the date of the entry of the order of adjudication).]"

¶ 45        At the close of the evidence at the fitness hearing, during its closing argument, the State recognized it had failed to comply with the notice requirement of the specific nine-month period alleged. See 750 ILCS 50/1(D)(m) (West 2012) (the State shall file with the court and serve

on the parties a pleading that specifies the nine-month period no later than three weeks prior to the close of discovery). Respondent's counsel, noting the State's error, argued only in support of her claim that respondent had successfully rebutted the presumption of depravity.

¶ 46          The trial court, noting the State's failure to comply with the notice requirement, seemed to find the State had proven by clear and convincing evidence that respondent was unfit on depravity grounds. The court stated: "I'm prepared to indicate that I am going to make the finding the State has proven by clear and convincing evidence that there is depravity as to—as to each." Nevertheless, the court allowed the State leave to file notice of the specific nine-month periods and to reopen proofs. The parties agreed in open court to reconvene on June 15, 2018, for the continued hearing.

¶ 47          On April 17, 2018, the State filed its notice, specifying three nine-month periods. However, no certificate of service was attached to the pleading, and there was no indication in the record that service was made upon respondent or respondent's counsel.

¶ 48          When the parties reconvened for the continued hearing on June 15, 2018, respondent did not appear personally. Her attorney did not object to the lack of service. The trial court proceeded to consider the State's evidence on respondent's alleged failure to make reasonable progress during the noted three nine-month periods.

¶ 49          By not objecting to her lack of notice, respondent forfeited the issue. Our supreme court has ruled that the State's failure to file a notice specifying the applicable nine-month period does not equate to the State's failure to state a cause of action. *In re S.L.*, 2014 IL 115424, ¶ 21. Rather, the lack of notice constitutes a pleading defect, which under section 2-612(c) of the Code of Civil Procedure (735 ILCS 5/2-612(c) (West 2016) (all pleading defects not objected to in the trial court are waived)) was forfeited by respondent when she failed to raise the issue in the trial

- 13 -

court at the June 15, 2018, hearing. *Id.* ¶ 27. Thus, we find no due-process violation during termination proceedings on these grounds.

¶ 50                                    B. Sufficiency of the Evidence

¶ 51        Next, respondent claims the evidence was insufficient to support the trial court's finding of unfitness. Specifically, she claims she was never offered the opportunity to be a parent to either minor. The minors, she claims, were taken into protective custody based "upon speculation as to [her] ability to parent given her character traits and personality flaws." Although she admits she has "difficulty dealing with emotional[ly] charged situations," she was working on the problem, and there was "evidence of her improvement." She claims DCFS recognized she was making progress between January 2016 and November 2016 but, after the December 2016 domestic incident, they noticed the "drastic change." This "drastic change" was respondent's failure to "calmly and effectively deal with her anger" in response to David's intoxication. She admits this is a "personality flaw" and should be addressed rather than used as a basis for termination of her parental rights.

¶ 52        Because termination of parental rights is a serious matter, the State must prove unfitness by clear and convincing evidence. *In re M.H.*, 196 Ill. 2d 356, 365 (2001). "A determination of parental unfitness involves factual findings and credibility assessments that the trial court is in the best position to make." *In re Tiffany M.*, 353 Ill. App. 3d 883, 889-90 (2004). A reviewing court accords great deference to a trial court's finding of parental unfitness, and such a finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re T.A.*, 359 Ill. App. 3d 953, 960 (2005).

¶ 53        If the trial court finds the State has carried its burden of proof as to parental fitness, we do not reweigh the evidence, but instead, we decide whether those findings are against the

manifest weight of the evidence. *In re R.L.*, 352 Ill. App. 3d 985, 998 (2004). A finding of unfitness is against the manifest weight of the evidence only if it is "clearly apparent" that the State failed to prove, by clear and convincing evidence, that the respondent was an unfit person. *In re Adoption of C.A.P.*, 373 Ill. App. 3d 423, 427 (2007).

¶ 54 Contrary to respondent's contention, it was not simply her reaction to the December 2016 incident that caused the State to pursue termination of her parental rights. Instead, the evidence demonstrated that, although she had been making reasonable progress for most of 2016, there were multiple nine-month periods where she had failed to do so. Of notable concern was her regression after her progression, as evidenced by the December 2016 incident. Respondent had stopped participating in services, stopped taking her medication, made threats of harm to herself and others, including the children, and was labeled by DCFS as "out of control." In fact, the evidence demonstrated that respondent had made a complete reversion to her volatile ways.

¶ 55 Between January 2016 and November 2016, respondent had indeed made some progress. However, beginning in November 2016, the police were called to the home numerous times regarding domestic violence and suicidal ideations; respondent's visits with the minors had to be suspended due to her "out-of-control" behavior; she had threatened DCFS workers, the minors, and her parents; and she admittedly continued to have a "very volatile relationship" with David.

¶ 56 It is this evidence the trial court reasonably relied on when it found respondent had failed to make reasonable progress toward the return of the minors. We find that decision was not against the manifest weight of the evidence.

¶ 57 C. Ineffective Assistance of Counsel

- 15 -

¶ 58 Respondent next asserts that her attorney failed to object to the State's complained-of noncompliance with the deadlines and procedures of the Juvenile Court Act. Had counsel forced compliance, she claims, the outcome of the case would have been different. She also contends her attorney was ineffective for failing to call as a witness at the fitness hearing her counselor, Christine Washo. Washo, she claims, would have testified consistently with her July 1, 2019, report, in which she described the dates and topics of sessions she had with respondent. Respondent conclusively states that Washo's testimony "would have provided evidence that [respondent] was continuously working on the issues that led to her children being placed in protective custody." Respondent requests a new hearing on the State's motion to terminate.

¶ 59 In a termination of parental rights proceeding, parents are entitled to effective assistance of counsel. *In re R.G.*, 165 Ill. App. 3d 112, 127 (1988). The standards for determining ineffective assistance of counsel were set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A respondent must show her counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability the result would have been different had there not been ineffective assistance of counsel. To demonstrate prejudice, respondent must show a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-95. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re A.R.*, 295 Ill. App. 3d 527, 531 (1998).

¶ 60 Respondent does not clearly frame an argument for her ineffective-assistance-of-counsel claim. She fails to explain how counsel's conduct fell below an objective standard of reasonableness and how the results of the hearing would have been different. Her bald and conclusory statements are insufficient to demonstrate either prong of the *Strickland* standard. As

- 16 -

her argument, respondent claims only, without more, that "[i]f counsel would have forced the State's compliance with the Illinois Juvenile Court Act of 1987, then the result in this case would have been different." Further, she fails to develop a cognizable argument relating to Washo's prospective testimony and how such testimony would have affected the outcome of the proceedings. In sum, based on the record, it is difficult to see how the results of these proceedings would be any different, regardless of counsel's performance. See *In re C.C.*, 368 Ill. App. 3d 744, 749 (2006).

¶ 61                                    D. *In Absentia* Warning

¶ 62            Finally, respondent claims the trial court erred in failing to admonish her that it would proceed toward termination of her parental rights in her absence if she failed to appear at the hearing. Respondent relies on section 113-4(e) of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-4(e) (West 2016)) (the required *in absentia* warnings upon a plea of not guilty) as support. Respondent does not provide authority that this criminal statute applies to termination-of-parental-rights proceedings. Further, she does not provide authority for her claim that she is entitled to a new trial on this basis. We find no error.

¶ 63                                    III. CONCLUSION

¶ 64            For the reasons stated, we affirm the trial court's judgment.

¶ 65            Affirmed.