NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220200-U

NO. 4-22-0200

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 29, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.W. and K.W., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois | ) | McLean County |
| Petitioner-Appellee, | ) | No. 19JA21 |
| v. | ) | |
| Valencia W., | ) | Honorable |
| Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding (1) the trial court's unfitness and
best-interest findings were not against the manifest weight of the evidence and
(2) respondent did not receive ineffective assistance of counsel.

¶ 2    Respondent mother, Valencia W., appeals from the trial court's judgment
terminating her parental rights to J.W. (born March 25, 2019) and K.W. (born September 30,
2020). On appeal, respondent argues (1) the trial court's unfitness and best-interest findings are
against the manifest weight of the evidence and (2) her counsel provided ineffective assistance
during the hearing on the State's petition to terminate parental rights. For the reasons that follow,
we affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4    The parental rights of J.W.'s father, Quentrail G., and K.W.'s putative fathers were
also terminated during the proceedings below. They are not, however, parties to this appeal.

¶ 5                          A. Petition to Terminate Parental Rights

¶ 6          In September 2021, the State filed a petition to terminate parental rights to the minors. The State alleged respondent was an unfit parent in that she failed to make reasonable progress toward the return of the minors to her care during a nine-month period following J.W.'s May 15, 2019, adjudication of neglected and K.W.'s December 3, 2020, adjudication of neglected, namely December 15, 2020, through September 15, 2021. 750 ILCS 50/1(D)(m)(ii) (West 2020). The State further alleged it was in the minors' best interests to terminate respondent's parental rights and appoint the Department of Children and Family Services as guardian with the power to consent to adoption.

¶ 7                                  B. Motion to Continue

¶ 8          In December 2021, respondent appeared for a scheduled hearing on the State's petition to terminate parental rights. Because of a change in her appointed counsel, respondent moved to continue the hearing until February 2022. The trial court granted respondent's motion. The court admonished respondent to stay in contact with the public defender's office and to provide any changes to her contact information. Respondent indicated she understood.

¶ 9          C. Hearing on the Petition to Terminate Parental Rights

¶ 10          In February 2022, respondent, despite being provided notice, did not appear for the scheduled hearing on the State's petition to terminate parental rights. Respondent's counsel informed the trial court that she had not been able to get in contact with respondent: "I have reached out to the few different phone numbers that appeared to be on the file. I have sent an e-mail. I have not been able to successfully get in contact with her." The court asked if respondent's counsel was ready to proceed with the hearing. Respondent's counsel responded in the affirmative.

¶ 11          With respect to the fitness portion of the hearing, the State moved for the trial court

to take judicial notice of the pleadings, orders, and docket entries, which the court granted over no objection. The State also moved for the admission of an evidence stipulation, which the court again granted over no objection. The State presented testimony from a caseworker who had been assigned to the case since September 2020. The testimony, however, concerned only Quentrail G., and respondent's counsel did not elicit any information from the caseworker about respondent. Respondent did not present any evidence. The following is gleaned from the evidence presented as is relevant to the allegation of unfitness concerning respondent.

¶ 12        From December 15, 2020, through September 15, 2021, respondent had the following service recommendations: (1) individual counseling, (2) substance abuse/drug screens, and (3) parenting/visitation.

¶ 13        Although respondent completed individual counseling in July 2020, she was referred to complete an additional mental-health assessment in November 2020 due, in part, to "continued concerns with [her] mental health, including unclear and incoherent text messages from [her]." In January 2021, respondent completed a mental-health assessment, which resulted in a recommendation for individual counseling. On February 1, 2021, respondent began counseling. She then attended counseling sessions on February 15 and March 15, 2021. Between March 16 and September 15, 2021, respondent did not attend any counseling sessions—she missed sessions on April 2, April 20, June 7, and August 10, 2021. As a result of these absences, respondent was unable to make any progress in counseling.

¶ 14        Respondent completed a substance abuse assessment in October 2019, which resulted in her not needing to complete any substance abuse treatment. However, she was required to complete drug screens. Respondent's attendance at drug screens was inconsistent—she failed to appear for screens on January 8, January 13, January 25, February 10, February 26, March 10,

March 15, March 31, April 5, April 14, May 3, June 2, June 7, June 16, June 25, June 30, July 7, July 12, July 23, July 28, August 6, August 9, August 18, August 27, September 8, and September 13, 2021. For the drug screens that she did complete, the results were negative for tested substances.

¶ 15 Respondent was referred to a parenting class in September 2020. She attended parenting classes from November 17 to December 22, 2020. On January 21, 2021, respondent received increased visitations, which included a third, day-long visit each week. After receiving the increase in visitations, respondent failed to consistently attend visits—she missed visitations on January 26, January 28, February 4, February 9, February 18, February 25, March 17, April 6, April 7, April 8, and April 20, 2021. During this period, respondent also brought an unknown man to a visit after being told that was not allowed. On April 26, 2021, visitations were decreased as a result of the missed visitations. The day-long visits were eliminated. After receiving the decrease in visitations, respondent continued to have attendance issues—she missed visitations on May 12, May 18, May 19, May 25, May 26, June 1, and June 2, 2021. On June 8, 2021, visitations were suspended as a result of the missed visitations. On June 15, 2021, visitations were reinstated. At the first visit after visitations were reinstated, respondent brought an unknown man to the visitation. Visitations were decreased to one day each week for two hours. Her attendance continued to be inconsistent. She also refused to communicate with the caseworker and would only speak with the case supervisor. She refused to give anyone information about her whereabouts or employment.

¶ 16 Based on this information, the State argued it had proven respondent's unfitness. Respondent's counsel did not make any argument on behalf of respondent. After its review of the evidence and arguments presented, the trial court found respondent was an unfit parent as alleged

in the State's petition to terminate parental rights.

¶ 17    After making its findings of unfitness, the trial court proceeded to the best-interest portion of the hearing. The State moved for the court to take judicial notice of the entire court file, an order terminating respondent's parental rights to her first child, and two best-interest reports, all of which the court granted over no objection. The State also presented testimony from the minors' foster mother. Quentrail G. presented his own testimony. Although respondent did not present any evidence, respondent's counsel cross-examined the minors' foster mother and Quentrail G. The following is gleaned from the evidence presented.

¶ 18    The minors had resided with their foster parents since shortly after their births. The minors' biological brother also resided in the home, having been previously adopted by the minors' foster parents. The minors were bonded to each other as well as their foster family. The minors referred to their foster mother as "mom" and their foster father as "G-Daddy." The foster parents provided for the minors' needs and were willing to provide them with permanency through adoption. The foster mother had raised 10 children. The foster mother was 70 years old, and the foster father was 75 years old. Neither foster parent had any major health issues, and they are actively engaged with the minors. In the event anything happened to the foster parents, they had a plan in place for their daughter, who was in her thirties and was involved in the minors' lives, to care for the minors.

¶ 19    Respondent attended visitations with the minors, which resulted in the minors gaining a familiarity with respondent. Respondent's attendance at visitations, however, was inconsistent and had decreased. Respondent had not completed the recommended services. Respondent had not verified her income or housing. There was a recent, unconfirmed report that respondent might be pregnant. Respondent did not stay in communication with the caseworker.

¶ 20    The State's witnesses believed it was in the minors' best interests to terminate respondent's parental rights.

¶ 21    Based on this information, the State argued it had proven it would be in the minors' best interests to terminate respondent's parental rights. Respondent's counsel did not make any argument on behalf of respondent. After its review of the evidence and arguments presented and its consideration of the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2020)), the trial court found it would be in the minors' best interests to terminate respondent's parental rights. The court entered a written order terminating respondent's parental rights.

¶ 22    This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, respondent argues (1) the trial court's unfitness and best-interest findings are against the manifest weight of the evidence and (2) her counsel provided ineffective assistance during the hearing on the State's petition to terminate parental rights. The State disagrees with each of respondent's arguments.

¶ 25                            A. Unfitness Finding

¶ 26    First, respondent argues the trial court's finding she was an unfit parent is against the manifest weight of the evidence.

¶ 27    In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 28　　　　The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)). Section 1(D)(m)(ii) provides, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected." *Id.*

¶ 29　　　　"Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227. The benchmark for measuring a parent's progress toward reunification "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17. In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007).

¶ 30　　　　In this case, the relevant time period was December 15, 2020, through September 15, 2021. During that period, the evidence showed respondent initially, as highlighted by respondent on appeal, engaged in the recommended services. That engagement, however, did not continue. Instead, respondent failed to consistently attend counseling, drug screens, and visitations. While respondent, on appeal, places blame for her failures with purported external factors (the caseworker and the COVID-19 pandemic), the responsibility to attend referred services ultimately lied with respondent. Given the information gleaned from the evidence presented, we find the trial court's unfitness finding is not against the manifest weight of the evidence.

¶ 31                              B. Best-Interest Findings

¶ 32            Second, respondent argues the trial court's best-interest findings are against the
manifest weight of the evidence.

¶ 33            "The termination of parental rights is a two-step process under which the best
interests of the child is considered only after a court finds the parent unfit." *In re E.B.*, 231 Ill. 2d
459, 472, 899 N.E.2d 218, 226 (2008). At the best-interest stage, the State must prove termination
is in a child's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367,
818 N.E.2d 1214, 1228 (2004); see also 705 ILCS 405/1-3(4.05) (West 2020) (setting forth several
factors a trial court must consider when determining whether termination of parental rights would
be in a child's best interest). On review, this court will not reverse a trial court's best-interest
finding unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d
875, 883, 932 N.E.2d 1192, 1199 (2010). A finding is against the manifest weight of the evidence
only where the opposite conclusion is clearly apparent. *Id.*

¶ 34            In this case, the evidence showed the minors had resided with their foster parents
for the majority of their lives. They were bonded to their foster parents, and their needs were being
met. The foster parents were willing to provide the minors with permanency through adoption.
Conversely, respondent, who had not completed recommended services, could not provide the
minors with the necessary care. Respondent, on appeal, complains about the fact she was never
afforded an opportunity to provide for the minors. The absence of that opportunity was, however,
the result of her own actions. Given the information gleaned from the evidence presented, we find
the trial court's best-interest findings are not against the manifest weight of the evidence.

¶ 35                              C. Counsel's Performance

¶ 36            Last, respondent argues her counsel provided ineffective assistance during the

hearing on the State's petition to terminate parental rights. Specifically, respondent complains about her counsel's entry into the evidence stipulation, failure to cross-examine the caseworker about the services provided and the relationship the caseworker had with respondent, and failure to make any argument on her behalf. Respondent contends had her counsel not entered into the evidence stipulation, it would have extended the length of the hearing and provided counsel with an opportunity to locate her and better argue her compliance with services. Respondent further contends had her counsel tested the sufficiency of the evidence and made arguments on her behalf, the trial court would have had the opportunity to weigh the evidence more fairly.

¶ 37        In a proceeding to terminate parental rights, a parent has a statutory, as opposed to constitutional, right to counsel. *In re Br. M.*, 2021 IL 125969, ¶ 41, 182 N.E.3d 693 (citing 705 ILCS 405/1-5(1) (West 2020)). Included within the statutory right to counsel is, by implication, a right to effective assistance. *Id.* ¶ 42.

¶ 38        Our courts, as acknowledged by respondent, routinely apply the rubric set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), when evaluating a claim of ineffective assistance in a proceeding to terminate parental rights. See, *e.g.*, *Br. M.*, 2021 IL 125969, ¶ 43; *In re A.P.-M.*, 2018 IL App (4th) 180208, ¶¶ 37-44, 110 N.E.3d 1126. Under the *Strickland* rubric, a parent, to establish a claim of ineffective assistance, must show (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *In re M.F.*, 326 Ill. App. 3d 1110, 1119, 762 N.E.2d 701, 709 (2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re A.R.*, 295 Ill. App. 3d 527, 531, 693 N.E.2d 869, 873 (1998). "Failure to satisfy either prong [under the *Strickland* rubric] precludes a finding of ineffective assistance of counsel." *A.P.-M.*, 2018 IL App (4th) 180208, ¶ 41.

¶ 39 While respondent asks this court to evaluate her claim of ineffective assistance under the *Strickland* rubric, she also briefly suggests, citing *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 40, 83 N.E.3d 584, that this court can use an alternative rubric to evaluate her claim, a rubric that has been applied in criminal cases that does not require a criminal defendant to make a showing of prejudice if the defendant's counsel entirely fails to subject the State's case to meaningful adversarial testing. We reject respondent's suggestion. In *In re C.C.*, 368 Ill. App. 3d 744, 748, 859 N.E.2d 170, 172 (2006), this court specifically considered and rejected the position that the rubric cited by respondent may be invoked by a parent in a termination proceeding. Absent any argument suggesting *C.C.* should be reconsidered, we stand by our holding in that case.

¶ 40 Applying the rubric set forth in *Strickland*, our review need not proceed any further than the prejudice prong. Respondent has not shown there is a reasonable probability the result of the hearing would have been different had her counsel performed as she suggests. We find it is entirely speculative that any delay in the hearing would have resulted in respondent's counsel locating respondent, especially given the explanation provided by respondent's counsel concerning her prior efforts to contact respondent. We also find, even if there were issues which could have been raised on cross-examination and/or addressed during arguments, there is no reasonable probability the result of the hearing would have been different given the evidence of respondent's failure to consistently attend counseling, drug screens, and visitations. Ultimately, we find the State presented overwhelming evidence to show respondent was an unfit parent and it would be in the minors' best interests to terminate her parental rights. Absent a showing that there is a reasonable probability the result of the hearing would have been different, we conclude respondent did not receive ineffective assistance of counsel.

¶ 41                                III. CONCLUSION

¶ 42       We affirm the trial court's judgment.

¶ 43       Affirmed.