NOTICE
Decision filed 09/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240646-U

NOS. 5-24-0646, 5-24-0647, 5-24-0648 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* GREYSON G., GRACELYN G., and JAMISON G., Minors | ) ) ) | Appeal from the Circuit Court of Madison County. |
| (The People of the State of Illinois, | ) ) | |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 22-JA-141, 22-JA-142, 23-JA-107 |
| Alyssa H. and Dillon G., | ) ) | Honorable Martin J. Mengarelli, |
| Respondents-Appellants). | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Evidence amply supported the circuit court's findings that respondents were unfit and that the minors' best interests required terminating their parental rights. As any contrary argument would be frivolous, we allow appointed counsel to withdraw and affirm the circuit court's judgment.

¶ 2    Respondents, Alyssa H. and Dillon G., appeal the circuit court's orders finding them unfit parents and terminating their parental rights to Greyson G., Gracelyn G., and Jamison G.[1] Their appointed appellate counsel concludes that there is no issue that could support an appeal. Accordingly, he has filed a motion to withdraw as counsel, along with a supporting memorandum

---

[1]Three separate appeals were filed and later consolidated, *sua sponte*, to the current case.

1

as to each parent. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondents of this motion, and this court has provided them with sufficient opportunity to respond. However, neither has done so. After considering the record on appeal and counsel's motions and supporting memorandum, we agree that there is no issue that could support an appeal. Accordingly, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4    On July 1, 2022, the State filed petitions alleging that Greyson and Gracelyn were neglected. The State alleged that both parents had substance abuse issues that impaired their ability to care for the minors, untreated mental health issues, a history of involvement with the Department of Children and Family Services (DCFS), and had engaged in domestic violence.

¶ 5    In August 2022, a report summarizing the reason for DCFS involvement stated the following:

> "Alyssa was driving Gracelyne [*sic*] (age 9 months) and Greysen [*sic*] (age 2) in her car at high speeds being chased by Alyssa's drug dealer and appearing high on Meth. Source witnessed the car chase and took the children out of the situation as soon as was possible. Alyssa is now using Meth regularly and admits to Adderall abuse. Alyssa stopped staying at the children's address approximately 6 days ago. Alyssa told Reporter she has been staying with her mother however, Alyssa's mother told Reporter Alyssa is not allowed to stay there and has not been doing so. Source believes Alyssa and the children were sleeping in Alyssa's car when not staying at the home with the rest of the children's family. Source believes this because bedding was observed in the vehicle which appeared to have been used for sleeping in it. A police report was filed in Macoupin County stating Alyssa

2

threatened to slice the children's necks and watch them drown in their own blood. Reporter is uncertain when this occurred or how the report was obtained."

¶ 6 Early reports filed by Hoyleton Youth and Family Services (HYFS) related that the respondents had had little if any contact with the agency and, accordingly, were not engaged in services. Eventually both respondents completed integrated assessments and some initial screenings. A visitation schedule was set, and respondents visited the children regularly. Both respondents were scheduled for regular drug screens. In April 2023, respondent gave birth to Jamison G. He was born with methamphetamine in his system and DCFS took him into custody almost immediately.

¶ 7 On April 17, 2024, HYFS filed a report in anticipation of terminating respondents' parental rights. It stated that communication with respondents was still inconsistent. Alyssa was rated mostly unsatisfactory on her service plan tasks. She was seeing a psychiatrist semiannually but was rated unsatisfactory for her mental health because she never completed a mental-health assessment. She took only 2 of 31 drug tests, 1 of which was positive for THC and amphetamines. She had not started parenting classes.

¶ 8 Dillon had completed a substance abuse assessment but had only attended one therapy session before being unsuccessfully discharged. He had not appeared at any scheduled drug tests since November 4, 2022. While he did complete the integrative assessment, he was rated unsatisfactory for mental health, domestic violence, and parenting classes, and for obtaining housing. Both parents, however, had attended all biweekly visits since August 17, 2023.

¶ 9 The children's placement was changed on June 7, 2023, after the maternal grandparents with whom they were placed allowed respondents to reside in their home while visits were required to be supervised. Numerous 911 calls were made from the residence of which caseworkers were

3

not informed. Jamison and Gracelyn were moved to traditional care, while Greyson was placed with an aunt, with whom he was doing well.

¶ 10 On May 2, 2024, the State petitioned to terminate respondents' parental rights to all three children. The petition alleged that they had failed to make reasonable progress or reasonable efforts during any nine-month period between September 20, 2022, and the filing of the petition.

¶ 11 Following a hearing, the court found both parents unfit and terminated their parental rights. The court's order notes that Alyssa was represented by counsel but did not personally attend the hearing. Dillon, who was listed as being *pro se*, did not appear. Both respondents filed notices of appeal, and this court consolidated the appeals.

¶ 12                                            ANALYSIS

¶ 13 Appellate counsel concludes that there are no reasonably meritorious issues that could support an appeal. Counsel initially notes that the record contains no transcripts of the various hearings, thus limiting the possible issues that can be raised.

¶ 14 Generally, the appellant has the burden to present a sufficiently complete record to support any claimed errors. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). In the absence of such a record, we presume that the trial court's order had a sufficient factual basis and conformed with the applicable law. *Id.*

¶ 15 The issue is being raised by respondents' appellate counsel, who did not represent either respondent before the circuit court. Thus, he is not responsible for the incomplete record. Alyssa could conceivably argue that trial counsel was ineffective for failing to ensure that the proceedings were transcribed or securing a certified bystander's report (see Ill. S. Ct. R. 323(c) (eff. July 1, 2017)), but she could not demonstrate that she was prejudiced.

4

¶ 16    Parents in a termination of parental rights proceeding have a statutory right to the effective assistance by counsel. *In re C.C.*, 368 Ill. App. 3d 744 (2006). To show that he or she received ineffective assistance of counsel, a parent must show that (1) counsel's performance was objectively unreasonable and (2) this substandard performance prejudiced the parent by creating a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 747 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)).

¶ 17    It is reasonable to assume that any live testimony at the termination and best interests hearings was consistent with the agency reports on file. As we will discuss, those reports, which are in the common-law record, support the trial court's conclusions. As neither parent attended those hearings, it is unlikely that transcripts would contain any significant evidence favorable to the parents that is not already in the agency reports. Thus, respondents were not prejudiced by the lack of hearing transcripts.

¶ 18    Counsel initially concludes that, based on the existing record, there is no meritorious argument that the court erred in terminating respondents' parental rights. A proceeding to terminate a party's parental rights under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) occurs in two stages. *In re Deandre D.*, 405 Ill. App. 3d 945, 952 (2010). First, the State must establish that the parent is "unfit to have a child" under one or more of the grounds in the Adoption Act. *In re D.T.*, 212 Ill. 2d 347, 352 (2004); see 750 ILCS 50/1(D) (West 2022). At the unfitness hearing, the State bears the burden of proving, by clear and convincing evidence, that the parent is unfit to have a child. See *In re D.W.*, 214 Ill. 2d 289, 315 (2005).

¶ 19    Here, the evidence supports the trial court's findings that neither parent made either reasonable progress or reasonable efforts. After nearly two years, respondents had not even completed some basic intake assessments. They had not completed parenting classes, mental

health treatment, or drug treatment. Based on how the children came into the system, respondents' drug usage was clearly an issue, yet neither attended more than a handful of required drug screenings, and some of the completed drug screenings produced positive results. While respondents visited with the children regularly, visitation itself is not sufficient where the parents have failed to address other issues. *In re C.P.*, 191 Ill. App. 3d 237, 244 (1989).

¶ 20    Counsel further concludes that no meritorious argument exists challenging the court's finding that terminating respondents' parental rights was in the minors' best interests. Once a parent is found unfit, the trial court moves on to the second stage of termination proceedings, which involves a determination of whether it is in the minor's best interest to terminate parental rights. At this stage, the State must demonstrate, by a preponderance of the evidence, that the termination is in the minor's best interest. *In re D.T.*, 212 Ill. 2d at 366-67.

¶ 21    Here, the evidence, while not voluminous, showed that the children were doing well in their foster placements. Gracelyn and Jamison were integrated into their foster home and the family very well. They were bonded to their caregivers and all their needs were met. They were thriving. Greyson was also doing well in his placement and was bonded with his aunt. She was able to meet his needs. Thus, the caseworker opined that it was in the children's best interest to remain in their foster homes. Thus, the court's finding that terminating respondents' parental rights was in the children's best interests was supported by the evidence.

¶ 22                                    CONCLUSION

¶ 23    As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the circuit court's judgment.


¶ 24    Motions granted; judgment affirmed.

6